26845. POLLARD, receiver, *v.* KENT *et al.*

DECIDED DECEMBER 5, 1938.

*James R. Davis, Beck, Goodrich & Beck,* for plaintiff·in error.
*William M. Dallas, John E. Holliman,* contra.

BROYLES, C. J. W. R. Kent, individually, and W. R.·Kent Jr., a minor, by W. R. Kent as next friend, sued H. D. Pollard; as receiver of Central of Georgia Railway Company, to recover $36,-500 for the alleged negligent homicide of Mrs. Evie Collins Kent at a grade crossing in the northern part of the City of Thomaston. The jury returned a verdict for the plaintiffs for $9000, and the defendant's exception is to the judgment overruling the motion for new trial as amended.

In part, the petition as amended substantially alleges that Mrs. Kent was the wife of W. R. Kent and ·the mother of W. R. Kent Jr.; that at about twenty minutes past three o'clock on the afternoon of February 6, 1937, she was riding in the City of Thomaston in a northeasterly direction on Railroad Street toward the intersection of that street with North Bethel Street in an automobile owned by her husband and driven by her brother-in-law, H. C. Kent Jr.; that she was "a mere passenger in said automobile and had no control" over its operation; that "Railroad Street runs northerly from the main business section of said city and then curves northerly, running somewhat parallel to the main line of . . said . . railway until" it joins North Bethel Street; that North Bethel Street runs northerly and, near the northern limits of said city, "forms a junction with Railroad Street;" that at a point about forty feet north of the junction of said streets the street "formed by such junction . . crosses at grade the main line ·of railway of said . . company;" that "at the . . crossing ·said street runs almost due north and said line of railway runs northeast and southwest," approaching said crossing in a curve; that as· the automobile in which Mrs. Kent was·riding approached said crossing, "the view of the driver of the automobile and . . Mrs. Kent, as to any train or car coming from the direction of Barnesville on said railway line, was obscured (1) because of the curve in· the railroad track," (2) because "said railway line is higher than the street crossing . . , and said automobile had to go up grade to reach the level of said railroad tracks," and (3) because of "underbrush and a bank of earth on the near side of said. . . tracks about three or four feet higher than said tracks, which partially concealed the ·approach of any train or car coming . .

from Barnesville;" that at all times the driver of said automobile had it under full control and was driving slowly; that the defendant's "gasoline coach or rail motor-car," operated by defendant's agents, "came down said line of railway curving southwesterly . . and crashed into the right side of said automobile at a speed of sixty miles per hour . . , severely injuring . . H. C. Kent Jr., and inflicting injuries upon . . Mrs. Kent from which she died almost instantly;" that defendant's rail motor-car ran quietly, and the defendant's employees approached said crossing without ringing a bell, or blowing·a horn, or giving any other signal of the approach of said rail motor-car to the crossing.

Briefly stated, the specifications of negligence alleged to be the proximate cause of Mrs. Kent's death are as follows: (a) the failure of defendant's employees to ring a bell, sound a horn or whistle, or give any sufficient signal of the approach of its rail motor-car to the crossing in said municipality; (b) said employees "did not keep . . a constant and vigilant lookout along the track ahead of said car;". (c) said rail motor-car approached and ran over said crossing at the reckless, excessive, and dangerous speed of sixty miles an hour; (d) said motor-car "was not under control as it approached said crossing;" (e) the defendant failed to provide "automatic gates or signals at said crossing;" (f) "defendant failed to maintain a watchman at said crossing" to warn traffic of the approach of its trains; (g) "defendant . . failed to apply the emergency brakes or air-brakes, or reverse the engine of said car, or to sand the tracks, after sighting the automobile. . ." The defendant's answer admitted jurisdiction, admitted that Pollard was the receiver of said railway company, and admitted that Mrs. Kent was killed at the time and place alleged, but denied any responsibility for the homicide and put the plaintiffs upon proof of the other material allegations of the petition. The defendant further pleaded that Mrs. Kent's injuries "were the result of her own negligence and the negligence of the driver of the automobile in which she was riding;" that said rail motor-car "was in plain view of the driver of the automobile and Mrs. Kent, and they both had notice of" its approach, "but, in utter disregard of the warning and the danger, the said automobile was driven directly in front of" the rail motor-car; that "both Mrs. Kent and the driver of said car, by the exercise of ordinary care, could have seen said

train in ample time before it reached said crossing to have stopped the automobile before going upon said track, and could have prevented the accident;" and that "the defendant was without fault and the alleged injury was caused by the want of ordinary care on the part of the plaintiff [Mrs. Kent?] and the driver of the car in which she was riding."

Counsel for the plaintiff in error make the following statement in their brief: "Inasmuch as it is not insisted that there was not 'sufficient evidence to support the verdict,' we deem it unnecessary to set forth the conflicting testimony upon these issues. But the plaintiff in error feels constrained to say that he does not admit the correctness or the justice of the verdict." In view of this statement, it is only necessary to say that the evidence was sufficient to support a recovery, that the verdict for $9000 was not excessive, and that there is no merit in the general grounds of the motion for new trial.

In the first special ground, it is urged that the court erred in charging the jury as follows: "Now, under this law and the rules given you in charge, if the plaintiffs in this case are entitled to recover they would be entitled to recover the full value of the life of the deceased at the time of the homicide without deduction for necessary or other personal expenses of the deceased had she lived. In ascertaining the amount of damages to be allowed, if you allow any, the jury are not restricted to any fixed rule in estimating the value of the life of the deceased. The age of the deceased, her health, the money, if any, earned by her, her habits, her probable loss of employment, her voluntarily abstaining from work, reduction of wages, dullness in business, infirmaties of increasing age, diminution in earning capacity, and any other fact which may contribute more or less to decreasing one's gross earning for a lifetime, may all be considered by you in determining the full value of the life of the deceased. In estimating damages, allowance and deduction should be made in favor of the defendant for any diminution in income which would have resulted from any of these causes. In ascertaining the value of decedent's life you will consider her age at the time of her death, the length of time she would probably have lived, the amount of her earnings, if any, as shown by the evidence, and any other fact which will enable you fairly and impartially to arrive at the value of her life; also on the ques-

tion of determining the amount of damages for domestic services, if you find any damages for such services, rendered by a wife and mother, you are authorized to consider the value of such services, if any, as shown by the evidence, and the value of any services incapable of exact proof that a wife and mother may render by the day, week or month, and award such damages on this account, if any are allowed, as would fairly compensate the plaintiffs for their loss, if any. You must keep these two items of damage separate so as not to allow double damages, if any are allowed, for the same injury."

This charge is alleged to be "erroneous, prejudicial, and calculated to confuse and mislead the jury for the following reasons: (a) because said instruction obviously means that the plaintiffs, if entitled to recover at all, were entitled to recover the full value of the life of their deceased wife and mother . . , and, in addition to this, the jury were authorized to consider the services that a wife and mother may render her family, 'and award such damages on this account, if any are allowed, as would fairly compensate the plaintiffs for their loss;'" and (b) "because the jury were authorized to award compensatory damages for the loss of the services 'that a wife and mother may render;'" movant contending "that the plaintiffs were not suing for, and were not entitled to recover compensatory damages of any kind," but "were suing for a penalty, to wit: the full value of the life of their mother [wife and mother?]; which means the present cash value of her probable earnings during the remainder of her expectancy;" and that it was prejudicial error to instruct the jury that there were two items of damages involved, to wit: "the full value of the life of the deceased . . , and such damages for the services of a wife and mother 'as would fairly compensate the plaintiffs for their loss.'"

Under Code, § 105-1306, the measure of recovery in this case was the full value of the life of the decedent, as shown by the evidence; and the full value of her life, as shown by the evidence, is the full value thereof, without deduction for necessary or other personal expenses of the decedent had she lived. Code, § 105-1308. "The full value of the life of the wife under [Code, § 105-1308], is the present value, and that is arrived at by determining from the evidence the gross value of her life and reducing this amount to its present cash value." *Central of Georgia Ry. Co.* v. *Keating,* 45

*Ga. App.* 811 (10) (165 S. E. 873). "In estimating the value of ordinary domestic service rendered by a wife, the jury are authorized to take into consideration what may be the value of many services incapable of exact proof, but measured in the light of their own observation and experience. 'Some wives perform manual labor—others do not; yet the husbands of the latter, no less than those of the former, would certainly be entitled to compensation from wrong-doers for causing inability to perform service. . . . There need be no direct or express evidence of the value of the wife's services, either by the day, week, month, or any other period of time, or of any aggregate sum.' *Metropolitan St. R. Co.* v. *Johnson,* 91 *Ga.* 466, 471, 472 (18 S. E. 816)." *Standard Oil Co.* v. *Reagan,* 15 *Ga. App.* 571 (9) (84 S. E. 69). At the bottom of page 599 of the *Reagan* case, this language appears: "The actual facts and circumstances of each case should guide the jury in estimating for themselves, in the light of their own observation and experience and to the satisfaction of their own consciences, the amount which would fairly and justly *compensate the plaintiff for his loss.*" (Italics ours.) In *Georgia Railroad & Bkg. Co.* v. *Farmer,* 45 *Ga. App.* 130 (164 S. E. 71), a case brought by a husband and his minor children for damages on account of the homicide of the wife and mother, the rule stated in the *Reagan* case is quoted with approval. The act under which the present action is brought is partly punitive and partly compensatory—punitive so far as the defendant is concerned, and compensatory as to the plaintiffs. *Savannah Electric Co.* v. *Bell,* 124 *Ga.* 663, 669 (53 S. E. 109). See also *Atlantic, Valdosta &c. R. Co.* v. *McDilda,* 125 *Ga.* 468, 470 (54 S. E. 140, 114 Am. St. R. 240). While the charge under consideration is not formulated with the exactness that might be desired, a careful analysis of it leads us to the conclusion that it does not disclose reversible error for any reason assigned in the ground.

Special ground 2 assigns error upon that part of the charge quoted in the preceding ground which deals with "the question of determining the amount of damages for domestic services;" (a) "Because the plaintiffs were not suing for, nor entitled to recover compensatory damages;" (b) "because the damages . . referred to were authorized [by the charge] to be awarded as compensation, in addition to the full value of the life of the deceased;"

124

(c) "because the jury were authorized to award damages for the loss of such services as 'a wife and mother may render,' without reference to whether such services had been rendered by Mrs. Kent or not . . ;" (d) "because the court nowhere instructed the jury that it was the cash value of such services that they were to estimate, in computing the value of the life of the deceased to herself if she had lived; but, on the contrary, instructed them that it was the incalculable value of the services of a wife and mother to her husband and child that they were to estimate, and award such damages as would compensate a husband and child for such loss;" (e) "because the court did not preface this excerpt . . 'with an instruction that in determining the full value of the life of the deceased wife and mother they might consider the services that she rendered in the home. And said charge . . authorized the jury to award compensatory damages for the loss of such services, in addition to the full value of her life." It will be observed that the excerpt complained of is a part and parcel of a sentence (and separated from it only by a semicolon), which begins: "In ascertaining the value of the decedent's life you will consider her age at the time of her death, the length of time she would probably have lived, the amount of her earnings, if any, as shown by the evidence, and *any other fact which will enable you fairly and impartially to arrive at the value of her life*" (italics ours) ; and that the excerpt in question begins: "also on the question of determining the amount of damages for domestic services," and follows the rule laid down in *Standard Oil Co.* v. *Reagan,* supra. When construed in the light of its context, we do not think that the excerpt is cause for the reversal of the judgment. In this connection see the authorities heretofore cited.

In special ground 3, it is contended that the court erred in charging: "You must keep these two items of damages separate, so as not to allow double damages, if any are allowed, for the same injury." Error is assigned upon this charge: (a) "because the two items referred to were the full value of the life of the deceased, as shown by the evidence, and compensatory damages for the value of such services as may be rendered by a wife and mother;" there being "only one item of recovery involved, to wit, the value of the life of the deceased;" and (b) "because the charge that the jury must keep the two items separate, would necessarily result in the

allowance of double damages. And the further instruction, 'so as not to allow double damages,' is both contradictory and ambiguous." We think that the foregoing cautionary instruction, given at the conclusion of the charge quoted in the first special ground, was beneficial, rather than detrimental to the plaintiff in error. In this connection see *Wright* v., *Bagwell,* 43 *Ga. App.* 336, 338, 339 (158 S. E. 621). We hold that this ground does not disclose reversible error for any reason assigned.

In special ground 4, error is alleged on the following charge of the court: "This is a suit filed by W. R. Kent, individually, and as next friend for W. R. Kent Jr., against H. D. Pollard, as receiver for the Central of Georgia Railway Company, to recover damages the plaintiffs allege they sustained as a result of the wrongful death of the wife and mother of these two parties by the agents of the receiver of the Central of Georgia Railway Company." This excerpt is alleged to be erroneous because "plaintiffs were suing to recover the present cash value of the life of the wife and mother under Code, § 105-1306, and the question of compensation for the loss sustained by them was not involved," and. "this charge was calculated to confuse and mislead the jury, because in a subsequent portion of the charge [the latter part of the excerpt quoted in the first special ground] the court instructed the jury as follows: 'also on the question of determining the amount of damages for domestic services,' " etc. Considering the excerpt complained of in connection with the remainder of the charge, and especially in connection with the subsequent charge upon the measure of damages in substantially the words of Code, §§ 105-1306, 105-1308, the assignment of error is not meritorious. As applicable to this ground, as well as to those preceding it, we quote from *Foster* v. *Burnley,* 56 *Ga. App.* 202 (192 S. E. 389), as follows: "Several excerpts from the charge of the court are complained of in the motion for new trial. While some of these detached fragments of the charge, if treated alone, are subject to slight criticism, when considered in the light of the charge as a whole, and the facts of the case, none of them discloses reversible error."

In their brief, counsel for the plaintiff in error state: "The 5th, 6th, and 7th grounds of the amended motion allege error in the charge of the court upon the subject of comparative negligence, and apportionment of damages. The error complained of in these

three grounds consists of the confusing and misleading manner in which the court gave in charge the law embraced in Code sections (2781) 94-703, and (4426) 105-603." The charge complained of in special ground 5 follows: "In determining this question of diligence or negligence, the law further provides that if the plaintiff, by the exercise of ordinary care, could have avoided the consequence to himself, caused by the defendant's negligence, if you find the defendant was negligent, he is not entitled to recover. In other cases the defendant is not relieved though the plaintiff may have, in some way, contributed to the injury sustained. It is for you to say whether or not this public law of the State was violated by the defendant . . as alleged in the petition. . . If you say it was, then the violation of that law would be, as a matter of law, an act of negligence on the part of the defendant. Then it would be necessary for you to say whether or not the negligence, if it existed, was the direct and proximate cause of the injury inflicted upon Mrs. Kent that resulted in her death. It is also, as I stated a minute ago, a question of fact for you to say whether or not, under the circumstances and conditions and surroundings that existed at the time, the defendant, in the operation of this . . rail motor-car, was negligent in any of the other ways, as a matter of fact, that are charged in the petition against the defendant. If you say that the defendant was negligent in any of those ways, and that the negligence was the direct and proximate cause of the injuries inflicted upon Mrs. Kent that resulted in her death, if you say that is true, then you say whether or not she was free from fault and whether, in the exercise of ordinary care for her own safety, she could have avoided the consequences of the negligence of the defendant, if it existed, and after it was discovered by her to exist, or, if in the exercise of ordinary care for her own safety, she could have discovered the negligence of the defendant. If you find that the defendant . . was negligent as charged, and you find that the deceased was not negligent in any way, or the driver of the automobile in any of the ways that are charged, then, under those circumstances, you would be authorized to find in favor of the plaintiffs on the issue of negligence. If you say that both parties were negligent, then it is for you to say whether or not they were equally negligent, or whether the negligence of one exceeded the negligence of the other, and if you say at the time, under all the

circumstances and conditions and surroundings that existed at the time, they were both negligent and both equally negligent, then the plaintiffs would not be entitled to recover at all. If you say both were negligent under all the circumstances, conditions, and surroundings that appear in the proof, but that the negligence of the deceased exceeded the negligence of the defendant, then the plaintiffs would not be entitled to recover. If you say both were negligent but that the negligence of the defendant exceeded the negligence of the deceased, then, notwithstanding the deceased was negligent, the plaintiffs would be entitled to recover, but the amount of the recovery shall be reduced in proportion you find the negligence of the deceased compared with the negligence of the defendant."

It is urged in the fifth special ground that "the court stated, in immediate connection with each other, two distinct rules of law—first, the rule that if the plaintiff could have avoided the consequences of defendant's negligence, he could not recover, and followed immediately by the rule that the plaintiff could recover even if he was negligent, if defendant's negligence was greater, without any explanation, and thus qualifying the former by the latter." Code, § 105-603 reads: "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained." Unquestionably, this rule of law gives the defendant a complete and perfect defense that is in no wise limited by the comparative negligence rule embodied in Code, § 94-703. *Americus, Preston & Lumpkin R. Co.* v. *Luckie*, 87 *Ga.* 6 (13 S. E. 105). The analysis of the two Code sections under consideration in the *Luckie* case is so clear, concise, and complete that we need to do little more than refer to it, without citation of subsequent decisions upon the subject treated there. In that case, this language appears: "It seems to be the clear meaning of our law that the plaintiff can never recover in an action for personal injuries, no matter what the negligence of the defendant may be, short of actual wantonness, when the proof shows he could by ordinary care, after the negligence of the defendant began, or was existing, have avoided the consequences to himself of that negligence. . . The law of contributory negligence is applicable only

where both parties are at fault, and when, also, the plaintiff could not by ordinary care have avoided the injury which the defendant's negligence produced."

The vice in the charge given in the *Luckie* case was that while the court correctly charged the law set forth in Code, § 105-603, supra, he improperly qualified it by charging the law of comparative negligence which appears in Code, § 94-703, supra, without making the proper explanation as to the class of cases to which the latter section is applicable. See page 8 of the *Luckie* case, supra. See also *Central of Ga. Ry. Co.* v. *Brown,* 138 *Ga.* 107, 111 (74 S. E. 839). Having indicated the law applicable to the present issue, we have reached the conclusion that the charge complained of in the instant case is not subject to the criticism made of it. Indeed, the case of *Pollard* v. *Harris,* 51 *Ga. App.* 898 (181 S. E. 593), appears to be decisive of the issue. In that case it was said: "It is only when two separate and independent principles of law are given in such manner as to leave the impression that one of them qualifies the other that a reversal is required. The vice in the charge in *Americus, Preston & Lumpkin R. Co.* v. *Luckie,* supra, as subsequently explained in *Central of Ga. Ry. Co.* v. *Brown,* supra, lay in the fact that 'the presiding judge first charged the rule that if the plaintiff by the use of ordinary care could have avoided the consequences of the defendant's negligence, she could not recover; then immediately, in the same sentence, separated only by a semicolon, and with the appearance of qualifying the rule, added: "but if both parties are at fault, and the alleged injury was the result of the fault of both, then, notwithstanding the plaintiff's negligence, she would be entitled to recover, but the amount of the recovery would be abated in proportion to the amount of fault on her part." ' " In the same *Pollard* case, the court, on page 900, states: "The charges in the instant case were not subject to the criticism made in the *Luckie* case. Both principles as embodied in the Code were independently stated. After stating and reiterating that the plaintiff would not be permitted to recover unless her husband was himself in the exercise of ordinary care, and after defining ordinary care, the judge then proceeded to address the jury and give to them the doctrine of comparative negligence with diminished damages, manifestly as a different and independent principle of law, and manifestly not subject to the interpretation that it was a qualifica-

tion of the previous charge." We hold that ground 5 discloses no reversible error.

The substance of special ground 6 is that the court erred in failing to directly qualify his charge upon comparative negligence by failing to give in that connection the following charge: "If the plaintiff, by ordinary care, could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover." It sufficiently appears from what was said in passing on the immediately preceding ground that we are of the opinion that the assignment of error in this ground shows no cause for reversing the judgment.

Special ground 7 is very similar to ground 6, and we hold that it discloses no reversible error.

In special ground 8, error is assigned upon the following charge: "If you say that the defendant was negligent in any of those ways and that negligence was the direct and proximate cause of the injuries inflicted upon Mrs. Kent . . , then you say whether or not *she* was free from fault, and whether in the exercise of ordinary care of *her* own safety *she* could have avoided the consequences of the negligence of the defendant, if it existed, and after it was discovered by *her* to exist, or by the exercise of ordinary care for *her own* safety, she could have discovered the negligence of the defendant." This charge is alleged to be erroneous "because the court limited defendant's defense to the negligence of Mrs. Kent, and deprived him of the benefit of any negligence that H. C. Kent Jr., the driver of the car and the agent of Mrs. Kent, might have been guilty of. . ." The court did instruct the jury: "If you say, under the evidence in this case, that the automobile in question was being used at the time for the business of the deceased, that it was her enterprise, then if you say the driver of the automobile was negligent, his negligence would be imputable to her just to the same extent as if she herself had been negligent under the same circumstances and conditions and surroundings that existed, so far as the driver of the automobile was concerned." Furthermore, the record shows that at the conclusion of the charge counsel for the defendant handed to the judge a written request to charge as follows: "I charge you that if you find that the death of Mrs. Kent was occasioned or caused by her own negligence, or by the negligence of H. C. Kent Jr., driver of the automobile, the de-

fendant would not be liable and you should find for the defendant;" and that the judge stated: "I am sure I instructed the jury this. If I did not, I do now, that if you find the death of Mrs. Kent was caused by her own negligence, or the driver of the automobile, the defendant would not be liable. I think I covered that. If I did not, it is a correct statement of the law. If it was not before given, I now instruct you that it is a correct statement of the law." We hold that there is no merit in the ground.

Special ground 9 is substantially the same as the preceding ground and there is no merit in it.

Special ground 10 complains that the court failed to charge the jury the principle of law embodied in Code, § 94-703, in this language: "No person shall recover damages from a railroad company for injury to himself or his property, where the same is done by his consent or is caused by his own negligence." In Seaboard Air-Line Railway v. Andrews, 140 Ga. 254, 258 (78 S. E. 925 Ann. Cas. 1914D, 165), there was a similar assignment of error, and the court said: "The judge instructed the jury that 'The plaintiff must recover, if at all, upon the specific acts of negligence set out in his petition; he can not recover upon any other act of negligence than those alleged to be the acts of negligence which caused the injury; and you will be confined in your investigation, in determining the acts of negligence, to those as laid in the petition.' He also instructed them that the plaintiff could not recover if they should find that the 'injury was not the direct, proximate result of the defendant's negligence.' This plainly told the jury that a verdict for plaintiff could not be based on any other act than negligence of defendant causing the injury, and that the grounds of negligence would be limited to those alleged in the petition. Negligence of defendant as the proximate cause is the antithesis of negligence of the plaintiff or consent of the plaintiff to the injury. An intelligent jury would readily understand the above restriction to negligence of defendant, as a basis of recovery for plaintiff, to mean that the injury must not have resulted from plaintiff's consent or from his negligence. If further instruction on that point had been desired, an appropriate request should have been made." An examination of the charge in the instant case satisfies us that it comes within the rule stated in the Andrews case, supra, and we hold that it is not erroneous for any reason

assigned. See also *Georgia R. & Banking Co.* v. *Farmer,* supra, where the ruling in the *Andrews* case, supra, was adopted.

Special ground 11 alleges error: "Because, after the jury trying this case had retired to their room to deliberate upon their verdict, and while they were in their room deliberating upon their verdict, the bailiff put in charge of the jury retired and turned the jury over to another bailiff, to wit, J. A. Holliman, who remained in charge of said jury for at least fifteen minutes. . . J. A. Holliman was the father of John E. Holliman, attorney of record for the plaintiff; and said . . attorney had a contingent fee depending upon the result of the case." It is averred in the ground that neither movant nor his attorney "had any notice or knowledge of this fact until after the verdict had been returned," and that it was error to allow said J. A. Holliman to so act as bailiff, he being disqualified by reason of his relationship to the attorney for the plaintiff. The court's note to the ground is: "During the time bailiff Holliman was left in charge of the jury he was in the sight and presence of the undersigned judge and at no time opened the jury-room door or had any contact with the jury or any conversation with the jury." It does not appear that any injury resulted to the defendant's cause by reason of the jury's being in such temporary charge of bailiff Holliman, and, without more, we hold, in view of the affidavits attached to the ground, that the assignment shows no cause for reversing the judgment.

It is averred in special ground 12 that after the jury had retired to their room to make up their verdict the following incident occurred: "After the jury had been out about two hours, the foreman . . knocked on the jury-room door, and his knock was answered by Mr. John Starling, the bailiff in attendance. The jury-room door was partly opened, and a member of the jury said something to the bailiff, who . . said something to the presiding judge. The judge spoke to the sheriff, and the sheriff went to the jury-room and communicated with a member of the jury. The sheriff then . . communicated with the judge. The sheriff then returned to the jury-room door, entered the jury-room, and closed the door behind him. The sheriff remained in the jury-room, with the door closed, for a few minutes, and then came out, closing the door behind him. In about ten minutes the jury returned a verdict in favor of the plaintiffs. Counsel for movant

were in the court-room when this happened, but did not hear any of the conversation above referred to, and did not know what said conversation was about until after the verdict was returned into court. The defendant was not present, and no one else was present representing the defendant except his attorneys of record. And said attorneys were not consulted by the bailiff, or the sheriff or the court, or any one else, as to whether or not the communications should be permitted, and never assented thereto. Movant shows that the bailiff informed the judge that the foreman of the jury wanted to speak to the sheriff, and the judge told the sheriff to see what was wanted. After communicating with the foreman, the sheriff told the judge that the foreman . . wanted to know whether if the jury found for the plaintiffs, the amount so found should be stated in dollars in the verdict, and whether interest should be found on that amount. The judge then directed the sheriff to tell the foreman of the jury that the amount must be stated in the verdict, but no interest was to be returned in the verdict, as plaintiffs had not sued for interest."

The substance of the assignments of error in this ground is that "it was prejudicial error for the court to communicate with the jury, or to direct the sheriff to communicate with them about the case . . , except in open court," and to allow the sheriff "to enter the jury-room and close the door behind him, and while there to communicate with the jury about the case," and "for the court to deliver additional instructions in the case under consideration to the jury privately through the agency of the sheriff." In over-ruling the motion for new trial the trial judge said in reference to this ground of the motion: "In this matter I am unable to agree with movant that what was here done was irregular, improper, or unlawful. But assuming for the sake of determining this issue that it was, I am of the opinion that it was wholly harmless to movant, in view of the affidavits submitted by respondents, which are not disputed or denied, and taking into consideration the subject-matter of the communications and that the transactions occurred in court, in the presence of counsel (though not in their hearing) and that no inquiry was made by counsel as to what was going on and no objection was made thereto. For error to work a new trial it must appear that the complaining party suffered some harm as a result of that error. Furthermore, if anything appar-

ently irregular or unlawful occurs in the presence and sight of counsel the duty is upon them to then inquire about it, or investigate it, and in case of jury trials not to wait until after verdict is returned to discover what could as well have been found out before verdict." While the course of the judge in having the sheriff enter the jury-room and deliver the message that he did is not to be commended, and should not be followed, the affidavits of the sheriff, the bailiffs and the jurors (attached to the ground) clearly show that the irregularity of the proceedings was not prejudicial to the defendant and did not in any way influence the jury in arriving at their verdict.

The refusal to grant a new trial was not error for any reason assigned.

*Judgment affirmed. MacIntyre, J., and Guerry, J., concur.*