A05A1933. REED v. AUTOZONE STORES, INC.
(627 SE2d 792)

MIKELL, Judge.

Jerry M. Reed slipped on an oil spill and fell while shopping at an AutoZone Stores, Inc., parts supply store. Reed filed a negligence

---

action against AutoZone, contending that his fall resulted in a serious injury to his right shoulder. After Reed presented his evidence to a jury, the trial court granted AutoZone's motion for a directed verdict on the grounds that Reed had failed to show his injury was caused by the fall. Reed claims on appeal that the trial court erroneously sustained AutoZone's objection to hypothetical questions posed to his surgeon, and that the trial court therefore improperly directed a verdict in favor of AutoZone. We agree and reverse.

At issue is whether the trial court erred in sustaining AutoZone's objection to the following two hypothetical questions posed during a deposition to Reed's orthopedic surgeon, Harry H. Ferran, M.D.:

> Q. I want to ask you to assume that previous to coming to see you on the 27th of May, [Reed] entered an AutoZone parts store and slipped on an oily substance, either motor oil or transmission oil or something related to that, and fell striking his right shoulder on a metal stacking table, something like this bookcase you have here, and then fell to the floor and then slipping on down; that he felt pain in the shoulder, and the pain in the shoulder got immediately worse. At that time he was approximately 58 years old with no previous shoulder problems, shoulder injuries. Could that type of acute event be related to the full thickness tear of the rotator cuff that you found upon surgery?
>
> A. Yes, sir.
>
> Q. All right. And continuing in assuming the same facts I've given you before, in your opinion was his injury and the surgery that you did causally connected?
>
> A. Yes, sir, I believe they were causally connected.

AutoZone objected to these hypothetical questions and responses on the grounds that they were "not asked accurately based on the undisputed evidence" and that it was improper to "ask [a doctor] to assume no problems when we know there was a problem." The trial court sustained the objection, noting that its difficulty lay in presenting a hypothetical question to the jury in which "they may or may not believe the hypothetical facts." Dr. Ferran's deposition, absent the excluded hypothetical questions and responses, was read to the jury.

"If an expert testifies by hypothetical question, the assumed facts must be placed in evidence by testimony or other legal means." (Citation and punctuation omitted.) *Jackson v. State*, 276 Ga. 94, 95 (3) (575 SE2d 447) (2003). If the assumed facts are disputed, then "[t]he truth of the facts assumed by a hypothetical question is a question for the determination of the jury, and it must determine whether the basis upon which the hypothetical question rests has

been established." (Citation and punctuation omitted.) *Shannon v. Kaylor*, 133 Ga. App. 514, 517 (3) (211 SE2d 368) (1974). The trial court must decide whether the assumed fact is supported by at least circumstantial evidence "before allowing the matter to go to the jury for its determination as to whether the evidence actually established the fact." (Citation omitted.) *Warmack v. Mini-Skools, Ltd.*, 164 Ga. App. 737, 738 (1) (297 SE2d 365) (1982). The admission of expert testimony is within the trial court's discretion. *Riley v. State*, 278 Ga. 677, 683 (4) (604 SE2d 488) (2004).

AutoZone contends that the assumed fact that Reed had no previous shoulder problems was directly contradictory to Reed's admission at trial, not supported by the evidence, and misleading. See *Kines v. City of Rome*, 220 Ga. App. 732, 733-734 (470 SE2d 311) (1996) (where uncontroverted testimony showed the deceased's mother's family had a long history of heart disease, hypothetical questions to experts assuming no family history of heart disease and mild to moderate history of heart disease were misleading, and expert depositions were therefore not credible evidence). More specifically, the evidence showed that eleven days before the AutoZone incident, Reed went to see Dr. Gary M. Dalley for a "health maintenance visit," during which Reed claimed to be in good health. According to the medical report, Reed told Dr. Dalley "[o]n further questioning [that Reed] has had some discomfort in his right shoulder and some in his neck as well." Reed testified that he "probably did" tell Dr. Dalley that he had had some discomfort in his right shoulder.

Reed claims that notwithstanding his testimony regarding his examination by Dr. Dalley, whether or not he had previous shoulder problems was a matter in dispute and that the hypothetical question to Dr. Ferran was therefore permissible. After reviewing the evidence, we agree with Reed. The medical report shows that Reed went to Dr. Dalley for a "maintenance" visit, and not for a "shoulder problem," that he was not diagnosed with a "shoulder problem" by Dr. Dalley, and that Reed was not suffering from shoulder discomfort at the time of the checkup but was reporting that he had experienced some discomfort in the past. Reed also testified that he had no shoulder problems before the date of the AutoZone incident.

Further testimony regarding the condition of Reed's right shoulder was contained in the unexcluded portions of Dr. Ferran's deposition testimony. When Dr. Ferran first saw Reed, Reed claimed to have struck his right shoulder after he slipped and fell in a store a week earlier. Reed told Dr. Ferran that the pain in his shoulder was greater the day after the fall, and so Reed had gone to the emergency room where X-rays failed to show any fractures. Reed complained that he continued to have pain in the shoulder which was made worse by attempting to lift the shoulder. He also told Dr. Ferran that he had

no previous shoulder injuries or similar symptoms in the past, and Dr. Ferran testified that he had no reason to disbelieve Reed.

Dr. Ferran ordered an MRI scan of Reed's shoulder, which revealed a tear in one of Reed's rotator cuff tendons. Dr. Ferran then surgically repaired the tendon. Dr. Ferran did not find anything during the surgery or his objective examination of Reed's shoulder that revealed "anything that could have been pre-existing." He also testified that there was no atrophy of Reed's supraspinatus muscle, and that the muscle could atrophy if the tear to the tendon had been present for a long period of time. Dr. Ferran found some arthritis in Reed's shoulder joint and also repaired a "tearing of the labrum" during the surgery, but Dr. Ferran testified that it was common for the joint to have some arthritis, which was a degenerative condition not caused by the fall, and that the tearing to the labrum was also a degenerative condition and its repair was incidental to the rotator cuff surgery.

Based on Reed's testimony that he had no previous shoulder problems and Dr. Ferran's testimony that he found no pre-existing conditions during examination and surgery on Reed's shoulder, the jury could conclude that it was true that Reed had no previous "shoulder problems" for purposes of the hypothetical questions posed to Dr. Ferran. If other testimony seems contradictory, such as Reed's admission that he told Dr. Dalley that he had previously experienced discomfort in his right shoulder and Dr. Ferran's testimony that Reed had arthritis in his shoulder joint, the evidence was for the jury to evaluate. See *Woodruff v. Naik*, 181 Ga. App. 70, 71 (6) (351 SE2d 233) (1986) (the jury determines if the basis for the hypothetical question has been established). The trial court therefore abused its discretion by sustaining AutoZone's objection to the hypothetical questions posed to Dr. Ferran. See *Hyles v. Cockrill*, 169 Ga. App. 132, 136-137 (8) (312 SE2d 124) (1983), overruled on other grounds, *Ketchup v. Howard*, 247 Ga. App. 54, 61 (2) (543 SE2d 371) (2000) (trial court erred in sustaining appellee's objection to the hypothetical question because the assumption therein was at least supported by circumstantial evidence). It follows that the trial court also erred when it granted AutoZone's motion for directed verdict for failing to present evidence that AutoZone's conduct caused Reed's shoulder injury. See *Vitello v. Scott*, 222 Ga. App. 134, 136-137 (1) (473 SE2d 504) (1996) (where trial court improperly excluded witness's opinion as to damages, the trial court also erred in granting a directed verdict for plaintiff's failure to prove damages).

*Judgment reversed. Andrews, P. J., and Phipps, J., concur.*

DECIDED JANUARY 18, 2006 —
RECONSIDERATION DENIED MARCH 3, 2006 — 

*George G. Dean II,* for appellant.
*Smith & Moore, Edward M. Newsom,* for appellee.