## A08A1463, A08A1464. GEORGIA DEPARTMENT OF TRANSPORTATION v. BALDWIN; and vice versa.

### (665 SE2d 898)

BLACKBURN, Presiding Judge.

In Case No. A08A1463, the Georgia Department of Transportation (DOT) appeals from a judgment in favor of Theodore Baldwin in a wrongful death action he filed on behalf of himself, his minor child, and his deceased wife's estate. DOT contends that the trial court erred by (1) failing to rule on its pretrial motion to exclude certain expert witness testimony, (2) admitting expert witness testimony as to the standard of care applicable to DOT's highway inspections, (3) admitting the expert witness's conclusion as to DOT's highway inspection, (4) asking the expert witness a hypothetical question, (5) admitting expert testimony as to an ultimate fact issue, (6) allowing Baldwin to testify as to his memory of his wife's income, (7) improperly admitting expert witness testimony based on secondary evidence, and (8) admitting certain expert testimony as to the value of the deceased wife's household services. Discerning no reversible error, we affirm the judgment in that appeal.

In a cross-appeal, Case No. A08A1464, Baldwin appeals the dismissal of his wrongful death claim based on the loss of his unborn child, arguing that the ante litem notice of his wrongful death claim for his wife's death was sufficient ante litem notice of a wrongful death claim based on his unborn child. Because Baldwin's ante litem notice failed to adequately state the nature of his loss, we affirm the trial court's ruling in that appeal.

---

[4] See id. at 296 (4) (b).

## Case No. A08A1463

Viewed in the light most favorable to the verdict, see *Ford Motor Co. v. Gibson*,[1] the record shows that Baldwin's wife drove her sedan into an intersection where a stop sign normally facing her lane had been knocked down and where drivers on the intersecting roadway were not required to stop or yield. A pickup truck towing a horse trailer approached from Baldwin's left and collided with her car. Baldwin, who was pregnant, died on the scene, and the unborn child was lost.

Baldwin's husband sued DOT for loss of consortium, wrongful death and pain and suffering on behalf of himself, his wife's estate, the unborn child, and their remaining son. At trial, testimony showed that the sign had been down for a period of weeks to two months and that a DOT crew had conducted litter patrol on the road approximately ten days before the accident. Also at trial, Baldwin's expert testified, over objection, that DOT had a policy requiring DOT foremen to make every effort to inspect roads on a weekly basis for hazards such as downed signs. The jury returned a $1,108,150 verdict (reduced to $1,000,000, in accordance with OCGA § 50-21-29 (b) (1)) on Baldwin's wrongful death claim and a $277,037 verdict on the estate's claim. DOT filed this appeal.

1. DOT contends that the trial court erred by failing to grant its request for a pretrial hearing on the admissibility of certain expert testimony to be offered by Baldwin. The request came in DOT's motion to exclude the testimony, which was filed the Thursday before the trial began on the following Monday. On the morning of the first day of trial, the court entertained the motion and deferred a ruling or a separate hearing, stating "all I can do is rule when it comes up." DOT's counsel voiced no objection at the time; therefore, any assertion of error based on this is waived.

> A litigant cannot submit to a ruling, acquiesce in the ruling, and still complain of same. He is required to stand his ground and fight in order to successfully enumerate as error an alleged erroneous ruling by the trial judge. Acquiescence completely deprives him of the right to complain further; he has agreed that the trial court's ruling was correct by submitting to it.

(Punctuation omitted.) *Fletcher v. Ellenburg.*[2]

Nevertheless, we note that as the issues arose during trial, DOT

---

[1] *Ford Motor Co. v. Gibson*, 283 Ga. 398, 399 (659 SE2d 346) (2008).

[2] *Fletcher v. Ellenburg*, 279 Ga. 52, 56 (2) (609 SE2d 337) (2005).

was allowed to voir dire the witness and the trial court timely ruled on DOT's then-made objections.[3] DOT points to no authority requiring the trial court to hold the requested hearing prior to trial. Accordingly, this enumeration is without merit.

2. DOT next challenges the trial court's ruling that Baldwin's expert witness was qualified to testify as to the standard of care applicable to DOT's routine inspection of highways. We discern no manifest abuse of discretion.

"The question of whether a witness is qualified to render an opinion as an expert is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion." (Punctuation omitted.) *Williamson v. Harvey Smith, Inc.*[4] "The possession of special knowledge in a field derived from experience, study, or both makes one an expert." *Woodland Partners Ltd. Partnership v. Dept. of Transp.*[5]

Here, Baldwin's expert witness testified that he had a bachelor's and a master's degree in civil engineering, had worked for the Georgia DOT for 15 years, was familiar with the DOT foreman training academy, had served as a county director of public works, and had reviewed pertinent DOT policies and reference materials. Further, with respect to the instant case, he had reviewed the accident report, photographs, and depositions, and had made a visit to the site of the collision. On direct examination, the witness referred to a DOT manual, which was admitted into evidence, and explained that DOT had a policy requiring each foreman to "make every effort to ride all of his routes each week to assure that he or she is aware of conditions on his route," including hazards such as downed signs. The witness further testified that the responsibilities of DOT's regular litter patrols include detecting downed stop signs, and that replacement of downed signs is a high priority. The witness also testified that missing or obscured stop signs require the most urgent response by DOT.

DOT objected to this testimony on the ground that it failed to provide an objective standard of care. However, we discern no abuse of discretion in allowing this testimony. The record shows that the witness was a trained traffic engineer and relied on his training and personal experience with DOT policies, which were themselves admitted into evidence. In light of the witness's training and

---

[3] Although DOT's motion was arguably untimely, see *Ambling Mgmt. Co. v. Purdy*, 283 Ga. App. 21, 27 (2) (640 SE2d 620) (2006), the trial court apparently chose to exercise its discretion to address DOT's objections to expert testimony as they arose during trial.

[4] *Williamson v. Harvey Smith, Inc.*, 246 Ga. App. 745, 748 (3) (542 SE2d 151) (2000).

[5] *Woodland Partners Ltd. Partnership v. Dept. of Transp.*, 286 Ga. App. 546, 547 (1) (a) (650 SE2d 277) (2007).

experience, we discern no manifest abuse of discretion in allowing this testimony. See *Brady v. Elevator Specialists.*[6]

3. DOT contends that the trial court impermissibly allowed Baldwin's expert to give his opinion on an ultimate fact, i.e., whether a DOT foreman should have detected the downed stop sign during an inspection. We discern no reversible error.

At trial, Baldwin's expert testified as follows:

> Counsel: [D]o you have an opinion as to whether or not the DOT or DOT employees should [discover] a stop sign that's down more than a week?
>
> Witness: Based on the fact that foremen are trained and instructed to ride their state routes in the county and to understand what's going on there and be aware of what's going on there, and the fact that the stop signs are a very priority item is, in my opinion, that if a stop sign is down for more than one week then certainly a foreman should have been able to catch that and see that and identify it and get it corrected.

DOT objected on the ground that the testimony addressed an ultimate issue of fact to be decided by the jury. However, "[e]xpert opinion testimony on issues to be decided by the jury, *even the ultimate issue*, is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the layman." (Punctuation omitted; emphasis supplied.) *Fortner v. Town of Register.*[7] "Provided an expert witness is properly qualified in the field in which he offers testimony, and the facts relied upon are within the bounds of the evidence, whether there is sufficient knowledge upon which to base an opinion goes to the weight and credibility of the testimony, not its admissibility." (Punctuation omitted.) *Woodland Partners Ltd. Partnership v. Dept. of Transp.*, supra, 286 Ga. App. at 548 (1) (b).

Here, the expert based his opinion on his personal knowledge of DOT's policies, foremen's training, and the method and frequency of foremen's inspection of assigned roadways. Laymen are not familiar with DOT's methods and training nor the scope of inspection routinely carried out by DOT foremen. Therefore, as this knowledge was beyond the ken of the average juror and was within the training and experience of the witness, it was not a manifest abuse of discretion to admit the expert's challenged testimony. Cf. *Thurman*

---

[6] *Brady v. Elevator Specialists*, 287 Ga. App. 304, 306-307 (1) (653 SE2d 59) (2007).

[7] *Fortner v. Town of Register*, 289 Ga. App. 543, 546 (1) (657 SE2d 620) (2008).

*v. Applebrook Country Dayschool*[8] (allowing expert testimony even if on ultimate issue).

4. DOT contends that the trial court erred by asking its own hypothetical questions of Baldwin's expert witness. We discern no reversible error.

During direct examination of his expert witness, Baldwin's counsel presented an assumption and asked a hypothetical question addressing whether Baldwin's wife could have seen the approaching truck that hit her. After objection by DOT and ensuing discussion, the trial court itself attempted to clarify the issue by asking the witness whether a driver in the position of the victim could see an approaching vehicle coming from the intersecting road in time to stop. DOT now contends that this was an erroneous hypothetical question, and that it was improper for the trial court to interject itself into the proceeding.

First, we note that "[a] trial judge may propound questions to a witness to develop fully the truth of the case, and the extent of such examination is a matter within the discretion of the court." *Ellison v. Aiken*.[9] See *Curry v. State*[10] (restating the same rule and clarifying that a trial court may not "express or intimate his opinion as to what has or has not been proved") (punctuation omitted). Here, the trial court did not comment on the evidence or newly address any unproven aspect of plaintiff's burden. Indeed, the trial court expressly stated that "in doing these questions I don't care what side you're on, I'm not advocating for him or him, I'm trying to find out what's going on which we've had trouble doing for one reason or another." While it would have been a good practice to rule on the objections and allow counsel to conduct the examination, we discern no abuse of the trial court's discretion in attempting to clarify the question.

With respect to the propriety of the hypothetical question itself, an expert may answer a hypothetical question when the question is based on assumed facts placed in evidence. *Reed v. AutoZone Stores*.[11] The trial court's question arose based on Baldwin's trial counsel's stated assumption, which comported with the admitted evidence:

> I want you to assume that the stop sign in this case . . . at State Road 109 was down. . . . Further I want you to assume that . . . Ms. Baldwin was traveling north on Odessa Road

---

[8] *Thurman v. Applebrook Country Dayschool*, 278 Ga. 784, 787 (2) (604 SE2d 832) (2004).

[9] *Ellison v. Aiken*, 74 Ga. App. 541, 544 (5) (40 SE2d 441) (1946).

[10] *Curry v. State*, 283 Ga. 99, 102 (4) (657 SE2d 218) (2008).

[11] *Reed v. AutoZone Stores*, 277 Ga. App. 860, 861 (627 SE2d 792) (2006).

with the stop sign not in place and that Ms. Jean Howard in a Ford F-350 pickup truck was traveling east bound on 109. I want you to assume that Odessa Road bears all the characteristics that you're aware of that it bore on March 18, 2001, being a county road without a posted speed limit.

In light of this stated assumption and the evidence supporting the assumption, we discern no error in allowing the expert witness to answer the hypothetical question.

5. DOT contends that the trial court erred in allowing Baldwin's expert to testify as to whether a driver in the victim's position could discern that she was approaching a more major road and would therefore be required to yield. We discern no abuse of the trial court's discretion in allowing such testimony.

Under OCGA § 24-9-65, any witness may give his opinion provided a sufficient foundation for the opinion is laid. . . . It is well settled that determination of whether the witness has established sufficient opportunity for forming a correct opinion, and a proper basis for expressing his opinion, is for the trial court. This decision will not be disturbed absent an abuse of discretion.

(Citation and punctuation omitted.) *Xiong v. Lankford.*[12]

Here, Baldwin's expert had visited the intersection and had viewed photographs of the intersection taken three days after the collision. Baldwin's trial counsel asked the witness, over DOT's objection, "Can you tell whether or not that's a major or minor road as you're approaching that?" In light of the witness's familiarity with the intersection gained during his site visit, as well as the photographs presented to him, we cannot say that the trial court abused his discretion in allowing the witness to testify as to a similarly-situated driver's opportunity to discern the nature of the upcoming intersection. See *Xiong v. Lankford*, supra, 226 Ga. App. at 129 (2); *Edge v. Fugatt*[13] ("a witness in a position to know from his own experience what occurs in the ordinary course of affairs in a given situation should be allowed to testify, the credit to be given it being left to the jury") (punctuation omitted).

6. DOT next contends that the trial court erred in allowing Baldwin to testify as to his memory of his wife's income. This enumeration is without merit.

---

[12] *Xiong v. Lankford*, 226 Ga. App. 126, 128-129 (2) (485 SE2d 534) (1997).
[13] *Edge v. Fugatt*, 264 Ga. App. 28, 29 (2) (589 SE2d 845) (2003).

At trial, Baldwin testified that, based on his recollection, his wife earned "$680 something" every two weeks. DOT unsuccessfully objected on the ground that Baldwin's memory was not primary evidence of what his wife earned. DOT now argues that such evidence was not admissible because documentary evidence such as the wife's employment records constituted the primary evidence of Baldwin's wife's earnings.

DOT relies on OCGA § 24-5-2, which provides that "[i]n order to admit secondary evidence [i.e., that which in itself indicates the existence of other and better proof], it shall appear that the primary evidence for some sufficient cause is not accessible to the diligence of the party." See OCGA § 24-5-1 (a). However, the question at issue concerned the prior earnings of Baldwin's deceased wife, not the actual contents of her prior paychecks, W-2 forms, or other documentary evidence of her past earnings. Although such documents certainly contained evidence of her past earnings, those documents did not preclude the admission of other evidence to prove the actual fact at issue, i.e., the amount of the deceased wife's income.

> It is not contrary to the best-evidence rule that oral testimony of a fact in issue may be primary evidence thereof, although there is written evidence of the same fact, where the essential fact to be proved is neither the existence nor the contents of the writing, but the existence of the independent fact itself, to which the writing is merely collateral or incidental. In such a situation the rule requiring production of original writings has no application.

(Punctuation omitted.) *Emmett v. Regions Bank*.[14] See *Michaels v. Kroger Co.*[15] (error in excluding testimonial evidence of plaintiff's earnings on the ground that best evidence would be income tax returns or W-2). Accordingly, we discern no error.

7. DOT also contends that the trial court erred in refusing to strike testimony from Baldwin's economic expert witness, which testimony was allegedly based on an incorrect assumption. This enumeration is without merit.

At trial, Baldwin's economic expert testified as to the present value of Baldwin's wife's future earnings based on Baldwin's recollection as to her past earnings, i.e., "$680 something" every two weeks. Based on that and other assumptions including the wife's age, the expert had originally calculated the figure to be $818,126. During DOT's voir dire, DOT presented employment records showing her

---

[14] *Emmett v. Regions Bank*, 238 Ga. App. 455, 458 (4) (518 SE2d 472) (1999).
[15] *Michaels v. Kroger Co.*, 172 Ga. App. 280, 284 (1) (322 SE2d 903) (1984).

annual income to be substantially less. DOT moved to strike the expert's prior testimony based on Baldwin's recollection of his wife's income. The trial court did not explicitly grant DOT's motion, but asked the expert to recalculate his future earnings estimate based on the employment records, which the expert did (arriving at $600,366) and which amount Baldwin did not dispute.

DOT contends that the trial court erred in not striking the expert's original, higher valuation. However, the record shows that the witness and Baldwin accepted DOT's reduced earnings assumption based on the wife's employment records and the witness presented a lower future earnings amount that was not disputed. Based on this, we find that the trial court adequately addressed DOT's objection. Furthermore, in light of our holding in Division 6, it was not legal error for the expert to initially rely on the testimony of Baldwin as to his wife's historical income, because "[t]he opinion of a witness qualified as an expert under this Code section may be given on the facts as proved by other witnesses." OCGA § 24-9-67.1 (a). Any residual conflict in the testimony was for the jury to resolve. *Physician Specialists in Anesthesia, P.C. v. MacNeill*.[16]

8. Finally, DOT contends that the trial court erred in allowing Baldwin's economic expert to testify as to the value of the wife's household services without isolating and subtracting the value she received as a result of her own household work. We disagree.

Under OCGA § 51-4-2 (a), Baldwin is entitled to "recover for the homicide of [his] spouse . . . the full value of the life of the decedent, as shown by the evidence." " 'Full value of the life of the decedent, as shown by the evidence' means the full value of the life of the decedent without deducting for any of the necessary or personal expenses of the decedent had [s]he lived." OCGA § 51-4-1 (1).

At trial, Baldwin's economic expert provided an estimate of the present value of household services performed by Baldwin's wife. DOT unsuccessfully objected and now argues that the trial court abused its discretion in allowing the testimony, arguing that the expert improperly failed to isolate and deduct the value of the benefit derived by the wife herself from her own household services. However, as explained by the expert, his testimony valued the time spent by the wife performing household work in service to the household. That the wife was a co-beneficiary of a meal she cooked for the household did not discount the value *to the other members of the household* of the time the wife spent cooking that meal. Based on this, we discern no abuse of discretion by the trial court in admitting

---

[16] *Physician Specialists in Anesthesia, P.C. v. MacNeill*, 246 Ga. App. 398, 411 (9) (539 SE2d 216) (2000).

the expert's testimony as to the value of the wife's household services. See *Pollard v. Kent*[17] ("[i]n estimating the value of ordinary domestic service rendered by a wife, the jury [is] authorized to take into consideration what may be the value of many services incapable of exact proof, but measured in the light of their own observation and experience") (punctuation omitted).

Based on the holdings above, we affirm in Case No. A08A1463.

## Case No. A08A1464

9. In Baldwin's cross-appeal, he appeals the dismissal of a wrongful death claim based on the loss of his unborn child, contending that the trial court erred in ruling that Baldwin's ante litem notice was deficient. We discern no error and affirm.[18]

"Our review of the grant of a motion to dismiss is de novo." (Punctuation omitted.) *Benefield v. Martin*.[19] The record shows that Baldwin filed one ante litem notice based on the automobile collision at issue. That notice specified the nature of his losses as follows: the wrongful death of Baldwin's wife; the full value of her life; the fright, shock, and mental suffering of the wife; physical pain and suffering of the wife; loss of consortium, society, advice, example, and counsel of the wife; value of the wife's services; punitive damages; attorney fees, costs, and expenses; and "any other damages as may be lawfully authorized which arise out of the above-described transaction or occurrence." The notice did not mention the wife's pregnancy or the loss of their unborn child. Following the filing of Baldwin's complaint, DOT successfully moved to dismiss his claim for wrongful death based on the loss of the unborn child, giving rise to this cross-appeal.

The Georgia Tort Claims Act (GTCA), at OCGA § 50-21-26 (a), "requires a party with a potential tort claim against the State to provide the State with notice of the claim prior to filing suit thereon." *Cummings v. Ga. Dept. of Juvenile Justice*.[20] The Act further requires that the notice state the nature of the loss suffered. OCGA § 50-21-26 (a) (5) (D). Here, despite his full knowledge of the extent of his claims (including his deceased wife's pregnancy), Baldwin failed to provide any mention of the wrongful death claim arising from the loss of his unborn child. Nevertheless, he contends that the notice of his wrongful death claim based on his wife's death

---

[17] *Pollard v. Kent*, 59 Ga. App. 118, 123 (200 SE 542) (1938).

[18] We need not and do not otherwise address the viability of Baldwin's wrongful death claim based on the loss of his unborn child.

[19] *Benefield v. Martin*, 276 Ga. App. 130 (622 SE2d 469) (2005).

[20] *Cummings v. Ga. Dept. of Juvenile Justice*, 282 Ga. 822, 823 (653 SE2d 729) (2007).

should suffice for purposes of a wrongful death claim based on the loss of his unborn child.

> It is well established that strict compliance with the notice provisions is a prerequisite to filing suit under the GTCA, and substantial compliance therewith is insufficient. This is because the GTCA represents a limited waiver of the State's sovereign immunity, crafted, as is constitutionally authorized, by our Legislature, and not subject to modification or abrogation by our courts.

(Citation omitted.) *Cummings v. Ga. Dept. of Juvenile Justice*, supra, 282 Ga. at 824. For this reason, the Supreme Court of Georgia has held that an ante litem notice stating claims based on (i) a wife's pain, disfigurement, and reduced life expectancy and (ii) the husband's loss of consortium did not as a matter of law satisfy the ante litem requirement with respect to a wrongful death claim based on the wife's subsequent death arising from the same alleged wrongful act. *Williams v. Ga. Dept. of Human Resources*.[21] In so holding, the Supreme Court rejected the "liberal construction [sought by the appellant, which] would undermine substantially the [statutory] requirement of notice to the state." Id. at 626.

Although Baldwin argues that a better policy would allow for a liberal construction of the notice requirement, we lack authority to reject either the binding precedent of the Supreme Court of Georgia or the legislature's statutory scheme delineating the waiver of Georgia's sovereign immunity. Accordingly, in light of Baldwin's failure to fully state the nature of his loss, i.e. the wrongful death claim arising from the loss of his unborn child (including Baldwin's failure to state any facts alluding to the unborn child or to the deceased wife's pregnancy), we discern no error in the trial court's dismissal of Baldwin's claim here.

*Judgments affirmed. Miller and Ellington, JJ., concur.*

DECIDED JULY 18, 2008.

*Thurbert E. Baker, Attorney General, Robert C. Edwards, Assistant Attorney General*, for appellant.

*Akin & Tate, William M. Akin, S. Lester Tate III*, for appellee.

---

[21] *Williams v. Ga. Dept. of Human Resources*, 272 Ga. 624, 626 (532 SE2d 401) (2000).