A98A1169, A98A1170. BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA et al. v. FROST; and vice versa.
(505 SE2d 236)

RUFFIN, Judge.

Thomas Lamar Frost, Jr., as administrator and next friend of his son Thomas Lamar Frost III, sued Dr. Francis Tedesco in his official capacity as the president of the Medical College of Georgia, and the Board of Regents of the University System of Georgia d/b/a the Medical College of Georgia ("Board of Regents"), claiming that the defendants' negligence caused his son's death.[1] In Case No. A98A1169, the defendants appeal from the trial court's denial of their motion to dis-

---

[1] Frost also sued his son's psychiatrist, Dr. Yogesh Pareek, but never served Dr. Pareek with notice of the suit and ultimately abandoned his claim against the psychiatrist. Accordingly, Dr. Pareek is not a party to this appeal.

miss the action. In Case No. A98A1170, Frost appeals from the trial court's setting aside of a default judgment entered against the defendants. For reasons which follow, we reverse with direction.

The underlying facts are as follows. On April 7, 1995, Frost's son, Thomas, sought treatment from Dr. Yogesh Pareek, a psychiatrist at the Medical College of Georgia's out-patient clinic. Dr. Pareek diagnosed Thomas with major depression. Thomas returned to Dr. Pareek on April 10, 1995 for a scheduled session. Thomas advised Dr. Pareek that he had nothing to live for, and he asked the doctor about the best way to die. Thomas warned Dr. Pareek during the session that if the doctor attempted to commit him, he would run to his car where he kept a gun and shoot himself. Dr. Pareek left the room to notify public safety officials and to complete forms committing Thomas to Georgia Regional Hospital. While Dr. Pareek was absent from the room, Thomas left, went to his car, and shot himself.

On April 10, 1997, Frost sued Dr. Tedesco in his official capacity and the Board of Regents. Frost perfected service on the Board of Regents and Dr. Tedesco, but failed to provide the requisite notice to the Department of Administrative Services ("DOAS") in accordance with OCGA § 50-21-26. After the defendants failed to file a timely answer to the suit, the trial court granted Frost a default judgment. The defendants moved to set aside the default judgment and to dismiss the action, highlighting Frost's failure to properly notify DOAS. The trial court granted the motion to set aside the default judgment, denied the motion to dismiss, and certified the case for immediate review by this Court.

In Case No. A98A1169, the defendants assert that the superior court erred in denying their motion to dismiss since Frost failed to provide the ante-litem notice to the DOAS as required by OCGA § 50-21-26 and that Dr. Tedesco is immune from suit.

In Case No. A98A1170, Frost asserts, inter alia, that the trial court erred in setting aside the default judgment since the ante-litem notice to DOAS was not required. In support of this assertion Frost relies in part on the Supreme Court of Georgia's decision in *Keenan v. Plouffe*, 267 Ga. 791 (482 SE2d 253) (1997).

### Case No. A98A1169

1. We first conclude that Dr. Tedesco is immune from suit. OCGA § 50-21-25 (a) provides in part that "[t]his article constitutes the exclusive remedy for any tort committed by a state officer or employee. A state officer or employee who commits a tort while acting within the scope of his or her duties or employment is not subject to lawsuit of liability therefor." Moreover, "[a] person bringing an action against the state under the provisions of this article must

name as a party defendant only the state government entity for which the state officer or employee was acting and shall not name the state officer or employee individually. In the event that the state officer or employee is individually named for an act or omission . . . , the state government entity for which the state officer or employee was acting must be substituted as the party defendant." OCGA § 50-21-25 (b). Because Dr. Tedesco, a state officer working for the Board of Regents d/b/a the Medical College of Georgia, a state agency, was sued only in his official capacity, he is entitled to immunity. OCGA § 50-21-25. Accordingly, the trial court erred in not dismissing Frost's suit against him.

Furthermore, we note that *Keenan* is inapplicable. *Keenan* involved a physician, a faculty member at the Medical College of Georgia, who operated on a private-pay patient at the medical college hospital. The surgery resulted in brain damage to the patient, for which the patient's husband sued the physician. The Supreme Court ruled that the physician was not acting within the course of his official duties as a state employee in treating the patient because the duties he was alleged to have violated were independent of his duties as a professor at the Medical College. Id. at 793. Accordingly, the physician was not shielded from liability by the provisions of the Georgia Tort Claims Act, OCGA § 50-21-20 et seq. Id.

While Frost attempts to apply *Keenan* here, the court limited the scope of *Keenan* by stating that "[b]ecause this case involves the exercise of . . . medical discretion on a private-pay patient that was not controlled by the government employer or by statute, we do not consider whether immunity is appropriate for state-employed physicians who are required to treat particular patients, or who are alleged to have violated governmental, as opposed to medical, responsibilities, or whose medical discretion is controlled or impacted by governmental standards or constraints." Id. at 796, n. 17.

In the instant case, Frost sued Dr. Tedesco in his official capacity as the president of the Medical College. Frost never claimed that Dr. Tedesco treated Thomas as a private-pay patient and is therefore liable for his negligent treatment. As well, there is no evidence of record to show that Dr. Tedesco in any way assisted in Thomas' psychiatric care. Clearly, Frost sued Dr. Tedesco for violations of his governmental duties as the president of the Medical College, rather than for any violation of his medical responsibilities. See id. Accordingly, *Keenan* is not controlling.

2. As it is clear that the Tort Claims Act applied in this case, Frost was required to comply with OCGA § 50-21-26 (a), which sets forth that "[n]o person, firm, or corporation having a tort claim against the state under this article shall bring any action against the state upon such claim without first giving notice of the claims as

follows: (1) [n]otice of a claim shall be given in writing within 12 months of the date the loss was discovered . . . (2) [n]otice of a claim shall be given in writing and shall be mailed by certified mail . . . or delivered personally to . . . the Risk Management Division of the Department of Administrative Services." Moreover, "[n]o action against the state under this article shall be commenced and the courts shall have no jurisdiction thereof unless and until a written notice of claim has been timely presented to the state as provided in [OCGA § 50-21-26 (a)]." OCGA § 50-21-26 (a) (3). See also *Howard v. State of Ga.*, 226 Ga. App. 543 (1) (487 SE2d 112) (1997). Here, Frost failed to provide the requisite ante-litem notice, and accordingly, the trial court had no jurisdiction over Frost's suit against the Board of Regents and Dr. Tedesco. *Howard*, supra; OCGA § 50-21-26 (a). Because the trial court had no jurisdiction over the action, it erred in denying the defendants' motion to dismiss.

### Case No. A98A1170

On appeal, "[a] trial court's ruling on a motion to set aside a judgment will be affirmed if there is any evidence to support it." *Hoesch America v. Dai Yang Metal Co.*, 217 Ga. App. 845, 849 (3) (459 SE2d 187) (1995).

As we have already concluded, Frost failed to provide the ante-litem notice as required by the Tort Claims Act, so the trial court had no jurisdiction over Frost's suit against the defendants. And, therefore, the trial court was without authority to grant either the default judgment or the motion to set aside the default judgment. Accordingly, the trial court's order granting the motion to set aside the default judgment is void and a nullity. See *Cabell v. State*, 221 Ga. App. 192 (471 SE2d 222) (1996); *Crotty v. Crotty*, 219 Ga. App. 408 (465 SE2d 517) (1995); *Borden, Inc. v. Holland*, 212 Ga. App. 820, 822 (1) (442 SE2d 916) (1994). Inasmuch as the order granting the motion to set aside is void, the trial court's judgment is reversed, and upon remand of this case the trial court is directed to vacate the order and dismiss the action for lack of jurisdiction. See *Cabell*, supra.

It is unnecessary to address Frost's and the defendants' other claims on appeal as the above analysis is dispositive of both appeals.

*Judgment reversed with direction. Pope, P. J., and Beasley, J., concur.*

DECIDED JULY 30, 1998 — ▮▮▮▮▮▮▮▮▮

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Dep-*

uty Attorney General, Loretta L. Pinkston, Senior Assistant Attorney General, Jennifer D. Roorbach, Assistant Attorney General, for appellants.
Samuel W. Cruse, for appellee.