S99G0178. WILLIAMS et al. v. DEPARTMENT OF HUMAN
RESOURCES et al.
(532 SE2d 401)

FLETCHER, Presiding Justice.

Paul and Sheila Williams sent an ante litem notice to the state claiming that she suffered pain, disfigurement, and reduced life expectancy and he suffered loss of consortium due to a public health nurse's failure to diagnose Mrs. Williams' breast cancer. After his wife died, Mr. Williams filed a wrongful death action against the Georgia Department of Human Resources, which the trial court dismissed for insufficient notice. The Court of Appeals for the State of Georgia affirmed, holding that Williams failed to strictly comply with the notice requirements of OCGA § 50-21-26.[1] Because the ante litem notice failed to assert a claim for wrongful death, we agree that it did not adequately notify the state of Williams' wrongful death claim. Therefore, we affirm.

Sheila Williams complained about a lump in her breast on five visits to the Lumpkin County Health Department from March to August 1994, but the health department's nurse did not examine Williams or refer her to a doctor for further evaluation. In November, Williams was diagnosed with breast cancer. On November 7, 1995, the couple gave written notice of their claims under OCGA § 50-21-26 of the Georgia Tort Claims Act. Ms. Williams died on January 28, 1996, but her husband did not give the state any notice of her death or his wrongful death claim. Instead, he sued Annette Harkins, the Lumpkin County Health Department, and DHR, alleging that Harkins committed malpractice in failing to diagnose and treat his wife. DHR moved to dismiss the complaint based on the plaintiff's failure to provide ante litem notice of the wrongful death claim. The trial court granted the motion as to the wrongful death claim, and the court of appeals affirmed. Williams' loss of consortium claim remains pending in the trial court, and the estate's claim for Sheila Williams' pain and suffering apparently has been filed in a separate action.

OCGA § 50-21-26 of the Georgia Tort Claims Act prohibits any person, firm, or corporation from bringing a tort action against the state without first giving notice to the state of the claim. The statute provides that no court shall have jurisdiction until a written notice of claim has been timely presented to the state as provided in subsection (a).[2] The court of appeals has consistently held that substantial compliance with the notice provisions is inadequate.[3]

Unlike the Federal Tort Claims Act or the notice required before

---

[1] *Williams v. Department of Human Resources*, 234 Ga. App. 638 (507 SE2d 230) (1998).

[2] OCGA § 50-21-26 (a) (3) (1998).

[3] See, e.g., *Howard v. State of Georgia*, 226 Ga. App. 543, 544 (487 SE2d 112) (1997).

suing municipal corporations, § 50-21-26 (a) specifies a detailed procedure for notifying the state of a claim before filing a lawsuit against it.[4] The notice must be given in writing within 12 months of the date that the loss was discovered or should have been discovered;[5] it must be mailed by certified mail, return receipt requested, or delivered personally to the Risk Management Division of the Department of Administrative Services; and a copy must be mailed or delivered to the state government entity whose acts or omissions serve as the basis for the claim.[6] The contents of the notice must include:

> (A) The name of the state government entity [that committed] the acts or omissions . . . ;
> (B) The time of the transaction or occurrence out of which the loss arose;
> (C) The place of the transaction or occurrence;
> (D) The nature of the loss suffered;
> (E) The amount of the loss claimed; and
> (F) The acts or omissions which caused the loss.[7]

The purpose of these requirements is to ensure that the state receives adequate notice of the claim to facilitate settlement before the filing of a lawsuit.[8]

In construing this statutory provision, both this Court and the court of appeals have looked to the plain meaning of the statutory language. In *Norris v. Georgia Department of Transportation*,[9] we held that the requirement of notice is satisfied when the plaintiff mails the notice of a claim in the manner specified under OCGA § 50-21-26 (a) (2), rejecting the state's contention that it must receive actual notice. Similarly, the court of appeals has held that parties must follow the procedure outlined in the statute to satisfy the requirement of ante litem notice. Thus, the court of appeals has dismissed claims when the plaintiff did not give any notice to the state,[10] failed to give notice within 12 months of the accident,[11] and

---

[4] Compare OCGA § 50-21-26 with 28 USCA § 2675 (claimant shall present claim to the appropriate federal agency) and OCGA § 36-33-5 (person shall present claim in writing to the governing authority stating the time, place and extent of injury and the negligence that caused the injury). See generally David J. Maleski, The 1992 Georgia Tort Claims Act, 9 Ga. St. U. L. Rev. 431, 436-438 (1993).

[5] OCGA § 50-21-26 (a) (1).

[6] OCGA § 50-21-26 (a) (2).

[7] OCGA § 50-21-26 (a) (5).

[8] See Maleski, 9 Ga. St. U. L. Rev. at 437.

[9] 268 Ga. 192, 193 (486 SE2d 826) (1997); *Doe v. Department of Corrections*, 268 Ga. 582, 584 (492 SE2d 516) (1997).

[10] See, e.g., *Board of Regents v. Frost*, 233 Ga. App. 692, 695 (505 SE2d 236) (1998); *Langton v. Department of Corrections*, 220 Ga. App. 445, 446 (469 SE2d 509) (1996).

[11] See *McGee v. State of Georgia*, 227 Ga. App. 107, 108 (487 SE2d 671) (1997).

failed to send notice to the Department of Administrative Services and the state agency responsible for the loss.[12]

OCGA § 50-21-26 (a) states that a person with a tort claim against the state shall not bring any lawsuit without first giving the state "notice of the claim." The term "claim" in the State Tort Claims Act is defined as "any demand against the State of Georgia for money only on account of loss caused by the tort of any state officer or employee"; the term " '[l]oss' means personal injury; disease; death; damage to tangible property . . . ; pain and suffering; mental anguish; and any other element of actual damages recoverable in actions for negligence."[13]

Construing these terms in the context of the statutory purpose and requirements for ante litem notice, we conclude that Mr. Williams never gave the state notice of his claim for the wrongful death of his wife prior to bringing his action against the state. The November 7, 1995, letter described the nature of Mrs. Williams' loss as pain, disfigurement, and a reduced life expectancy; it described Mr. Williams' loss as a loss of consortium. The notice did not, and could not, have asserted the death of Mrs. Williams as part of his loss since the letter was written 11 weeks before she died. Because a claim for wrongful death does not accrue until the death occurs, it is impossible to determine the nature of the loss or the person having the claim until the death.[14]

Applying the dissent's interpretation, individuals could sue the state based on the notice of other persons about other claims, so long as the claims derived from the same negligent act. If, for example, Paul Williams had died before his wife, their children would be entitled to bring the action for Mrs. Williams' wrongful death and, under the dissent's view, would have been able to sue based solely on their mother's notice of her pain and suffering and their father's notice of loss of consortium. That liberal construction would undermine substantially the requirement of notice to the state.

Following Mrs. Williams' death, Mr. Williams should have given the state notice of his claim for the wrongful death of his wife before suing the state. Because the notice that he and his wife gave prior to her death did not adequately describe the nature of his loss after her death, we agree with the court of appeals that the trial court properly dismissed the wrongful death claim.

---

[12] See *Kim v. Department of Transp.*, 235 Ga. App. 480, 481-482 (510 SE2d 50) (1998); *Howard*, 226 Ga. App. at 545.

[13] OCGA § 50-21-22 (1), (3).

[14] See OCGA §§ 51-4-2, 51-4-5; *Lovett v. Garvin*, 232 Ga. 747 (208 SE2d 838) (1974) (because wrongful death claim is for injury sustained by survivor as a result of the death, not for the injury suffered by the deceased, husband has claim that accrues at time of wife's death, not at time injuries were inflicted).

*Judgment affirmed. All the Justices concur, except Benham, C. J., Hunstein and Thompson, JJ., who dissent.*

BENHAM, Chief Justice, dissenting.

I respectfully dissent to the majority opinion because it confuses a "claim," which is explicitly defined by the statute as simply a demand for money on account of a loss by a state actor, with a "cause of action." In essence, the majority is holding that a person does not experience a loss, as defined under the statute, until his or her cause of action has accrued on that loss.

The Georgia Tort Claims Act provides that "[n]o action against the state under this article shall be commenced and the courts shall have no jurisdiction thereof unless and until a written notice of claim has been timely presented to the state as provided in this subsection." OCGA § 50-21-26 (a) (3). The notice provided to the state must include a description of the "nature of the loss suffered." The statute states that a notice of claim should describe the loss, "to the extent of the claimant's knowledge and belief and as may be practicable under the circumstances." Given the permissive language of the statute, Mrs. Williams' description of her loss complied with this requirement. In the letter sent by petitioner and Mrs. Williams, they gave notice that, as a result of the actions of the state, Mrs. Williams had suffered "pain, disfigurement, and greatly reduced life expectancy, with a concomitant loss of both the intangible and tangible benefits of life itself, resulting from the denial to her of the benefits of early detection and treatment of breast cancer, including what would have been an increased likelihood of total recovery, a likelihood of longer term survival, and a likelihood of reduced treatment, and suffering." The description completely and accurately described her loss as required by the statute, given the broad definition of "loss." It is inconceivable that the ante litem notice prepared by the Williams did not put the state on notice that Mrs. Williams would die.

I believe the Court of Appeals and the majority erred in construing the statute in an overly technical manner that disregarded the literal language of the statute in favor of terms that appeared nowhere in the statute. *ALLTELL Ga. Communications Corp. v. Ga. Public Svc. Comm.*, 270 Ga. 105 (505 SE2d 218) (1998) ("When construing a statute, a court must first look to the literal meaning of the act, and if the language is plain and does not lead to absurd or impractical consequences, the court has no authority to place a different construction upon it, but must construe it according to its terms."). Even if the language of the notice provision was not clear and unambiguous, a judgment in favor of petitioner Williams is warranted since the legislature intended the Act to provide fair and equitable relief for those claimants who have suffered injury due to the

actions of the State. In *Norris v. Dept. of Transp.*, 268 Ga. 192 (486 SE2d 826) (1997), this Court resolved a question regarding transmittal of ante litem notice in favor of the claimant in light of the legislature's concern about equity and fairness when we decided that notice is timely upon mailing by the deadline, rather than upon actual receipt of the notice. The Court noted, "The stated intent of the Act is to balance strict application of the doctrine of sovereign immunity, which may produce 'inherently unfair and inequitable results' against the need for limited 'exposure of the state treasury to tort liability.' [Cit.]" Id. at 192. By rejecting respondent DHR's characterization of the notice provision, I am interpreting the statute in light of the "stated legislative intent of achieving fairness and uniformity in the application of the Act," just as was done in *Norris*. Id. at 193.

Thus it is clear that an unduly technical interpretation of the notice provision is not warranted in this case because not only is the language of the statute clear, the legislature has expressly stated that the statute was written to alleviate the harsh effects of sovereign immunity. I do not believe that limiting liability by dismissing potentially meritorious claims based on a highly technical interpretation of a very permissively worded notice provision furthers the legislature's goal of achieving fair and equitable results by a limited waiver of sovereign immunity. While the statute emphasizes that the state's liability must be limited because of the broad range of services the state must perform, the statute is explicit in listing means by which the state's liability is limited.[15]

This interpretation of the notice provision is in accord with how the analogous Federal Tort Claims Act ("FTCA") has been interpreted. While the FTCA is not identical to the GTCA, comparison with this statute is warranted because each statute has as its purpose assisting the government in facilitating settlement. See Maleski, 9 Ga. St. U. L. Rev. 431, 437; *Adams v. United States*, 615 F2d 284, 288 (5th Cir. 1980). To achieve this purpose, federal courts have determined that ante litem notice need only contain enough facts to allow the government to make a thorough investigation and to assist in settlement negotiations. *Rise v. United States*, 630 F2d 1068, 1071 (5th Cir. 1980).

Despite the permissive language of the Georgia statute, the stated intent of the legislature in favor of achieving fair and equitable results, and the manner in which federal courts have interpreted the FTCA, the majority determines that since Mrs. Williams had not

---

[15] For example, the statute provides that liability is limited to $1 million per person, provides for no state liability for discretionary acts, provides for no more than one recovery for each "occurrence," and lists several situations for which the state will not be liable for losses. OCGA §§ 50-21-21; 50-21-24; 50-21-25; 50-21-29.

yet died when she sent her letter of notice, it was impossible for her to provide notice of a wrongful death action. In making this holding, the majority assumes the term "claim" as it is used in this statute is synonymous with a "cause of action."[16] However, "claim" under the GTCA is defined as "any demand against the State of Georgia for money only on account of loss caused by the tort of any state officer or employee committed while acting within the scope of his or her official duties." OCGA § 50-21-22. Thus, the statute does not require notice of the causes of action that will be pursued by the claimant, but simply a description of the injuries he has suffered as a result of state action. Federal case law is explicit in making the distinction between a claim and a cause of action under the FTCA. *Brown v. United States*, 838 F2d 1157, 1161 (11th Cir. 1988) ("A 'claim' is not synonymous with a 'legal cause of action.' [Cits.]").

Neither does the statute's definition of the word "loss" suggest that claimants must provide the cause of action or theory of recovery they will pursue before they file suit. "Loss" is broadly defined in this statute as "personal injury; disease; death; damage to tangible property, including lost wages and economic loss to the person who suffered the injury, disease, or death; pain and suffering; mental anguish; and any other element of actual damages recoverable in actions for negligence." OCGA § 50-21-22 (3). This definition of loss does not list specific causes of action, but a sample of injuries that would be actionable. Further, a claimant is not required to state the loss, but the "nature of the loss." This implies that the legislature did not intend for a party to state specific causes of actions or technical elements of these claims, but instead a description of the harm the state's action has caused the claimant. Thus, it is clear that nowhere does the statute require a claimant to state the cause of action on which he will file suit. The fact that Mrs. Williams had not died precluded her husband from filing a wrongful death suit at that time, but did not preclude her from giving the State notice of her claim for compensation due to the State's fatal mistake. To hold otherwise would lead to the unreasonable conclusion that Mrs. Williams had not yet experienced loss when she discovered that she had developed a terminal illness simply because her cause of action had not yet accrued.

---

[16] Respondent DHR argues that Mrs. Williams' loss had not "accrued," the proper party was not named, and that the description of the loss did not contain the elements of a wrongful death claim. These are all technical elements that are associated with a cause of action when a complaint is filed, but are not necessary when a party has made a demand and settlement is being discussed. Respondent's use of the words "claim" and "loss" in this manner are not consistent with the definition of these words in the statute. In the statute, it is clear that a "claim" is different from a "cause of action" and a "loss" is simply the injury suffered from the State's action or omission.

A ruling that the notice given by petitioner and Mrs. Williams is sufficient would not run counter to public policy because, among other considerations, the notice provision allows the State the opportunity to thoroughly investigate the claim to allow for time to consider settlement, allows the State to assess its liability and avoids prejudice to the State.[17] I believe that these policy considerations would be furthered by adopting a rule where the State is deemed to be on notice of all the possible causes of action that could be revealed by a reasonable investigation of the allegations raised in the ante litem notice. *Burchfield v. United States*, 168 F3d 1252 (11th Cir. 1999) (Eleventh Circuit Court of Appeals held that patient's administrative claim under the FTCA contained sufficient information to put the VA on notice where the patient informed the agency that he had developed osteoporosis due to the VA doctor's negligence in prescribing prednisone, but filed a complaint alleging that the physicians failed to diagnose the patient's osteoporosis and exacerbated the condition by prescribing prednisone and by failing to prescribe drugs to counteract the drug's effects.). By stating in general terms the injury that has occurred and the actions by the State that caused the loss, the State has enough information to investigate the claims. From this investigation, the State should be able to ascertain potential actions that may be filed, the merits of the actions, and the feasibility of early settlement.

It is particularly clear that the notice given in this case was not so general and indefinite that the State was prejudiced by having no basis for investigation. From the record, it is apparent that the State was well aware that Mrs. Williams was about to die, given that the State's attorney attended Mrs. Williams' deposition that was taken early in order to preserve her testimony before her imminent death. Under these circumstances, I see no benefit that the State would have gained from another notice after Mrs. Williams' death that would justify dismissing a potentially meritorious action. See *Brown*, supra ("Requiring the appellee to exhaust the administrative claim procedure again would serve no useful purpose. It is unlikely that the agency would conduct a second investigation or otherwise act any differently.").[18] A separate notice would not have assisted the State any

---

[17] The State also claims that if Mrs. Williams is entitled to prevail, the State "would be put in the position of settling claims that might never accrue with persons who are not the proper claimants, subjecting the public funds to multiple recoveries for the same incident." This situation could never occur because the statute specifically limits each claimant to one recovery of up to $1 million for each "occurrence" and the State's aggregate liability for each "occurrence" to $3 million. OCGA § 50-21-29.

[18] *Brown* involved a situation similar to the instant case. In *Brown*, the plaintiff filed a claim pursuant to the FTCA and gave notice to the VA with respect to the failure of the doctors to diagnose tongue and throat cancer from which he had been suffering. The plaintiff

further in its investigations because it merely would have confirmed a result the State was already aware was forthcoming.

Since the majority holding employs a highly technical construction of the statute that contravenes the stated remedial purpose of the statute as well as the plain language of the statute, I respectfully dissent.

I am authorized to state that Justice Hunstein and Justice Thompson join in this dissent.

DECIDED JULY 5, 2000 —
RECONSIDERATION DENIED JULY 28, 2000.

*Toliver & Gainer, Alvin L. Toliver, Joseph H. King, Jr.*, for appellant.

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Kimberly L. Schwartz, Loretta L. Pinkston, Assistant Attorneys General, Gray, Hedrick & Edenfield, Bruce M. Edenfield*, for appellees.

*Finch, McCranie, Brown, Hendrix & Sullivan, Michael A. Sullivan*, amicus curiae.

---

filed a medical malpractice suit in federal district court as well as Florida state court, but died before either suit went to trial. The plaintiff's attorney filed another notice of claim with the VA, but failed to wait six months before amending the complaint to include a wrongful death claim. The Eleventh Circuit Court of Appeals ruled that a separate claim was not needed to file the wrongful death claim.