312 Ga. 438
FINAL COPY

S20G1518. ROBERTS v. UNISON BEHAVIORAL HEALTH.

NAHMIAS, Chief Justice.

After Sally Madison Roberts was involved in a car accident with a vehicle owned by Unison Behavioral Health, a Georgia community service board, she filed suit against Unison. As required by the Georgia Tort Claims Act ("GTCA"), OCGA § 50-21-20 et seq., Roberts provided an ante litem notice listing, among other things, the nature of her loss. See OCGA § 50-21-26 (a) (5) (D). Unison moved to dismiss Roberts's complaint for lack of subject matter jurisdiction, however, arguing that the description of her loss was insufficient. The trial court denied the motion to dismiss, but after Unison was granted an interlocutory appeal, the Court of Appeals reversed. See *Unison Behavioral Health v. Roberts*, 356 Ga. App. XXVIII (Case No. A20A0595) (July 1, 2020) (unpublished). We granted Roberts's petition for certiorari to decide whether the Court of Appeals erred in determining that Roberts's ante litem notice

failed to meet the requirements of OCGA § 50-21-26 (a) (5) (D). Because we conclude that Roberts's notice was sufficient, we reverse the Court of Appeals' decision.

1. The pertinent facts are undisputed. On April 17, 2017, Roberts was in a car accident with a vehicle owned by Unison and driven by a Unison employee. Roberts's mother[1] began discussing a possible settlement with a liability adjuster at the Georgia Department of Administrative Services ("DOAS") soon after Roberts's accident, but no settlement was reached. On February 28, 2018, Roberts's attorney sent an ante litem notice of Roberts's claim by e-mail and certified mail to the DOAS, the Georgia Department of Behavioral Health and Developmental Disabilities, and Unison. Under the heading "Nature of loss suffered," the notice gave the following description:

> Sally Madison Roberts: Bodily injury; past, present and future mental and physical pain and suffering; infliction of emotional distress; past, present and future medical expenses; past, present and future lost earnings; diminished earning capacity.

---

[1] In her reply brief, Roberts asserts that she was a minor at this time.

The notice also said, among other things, that the loss was caused by Unison's employee operating a van "in a wanton and negligent manner and collid[ing] with the rear end of Ms. Roberts'[s] vehicle at a high rate of speed" and that the "amount of loss claimed" was $1,000,000.

On November 8, 2018, Roberts filed a complaint in the Bacon County Superior Court alleging that Unison's negligence caused her car accident and injuries.[2] Unison, represented by the Attorney General, filed a special appearance answer and a motion to dismiss, asserting that the ante litem notice did not comply with OCGA § 50-21-26 (a) (5) (D) and thus the lawsuit was barred by sovereign immunity.[3]

On June 21, 2019, the trial court denied Unison's motion to dismiss, ruling that Roberts's notice satisfied the requirement of OCGA § 50-21-26 (a) (5) (D). But the trial court granted Unison a

---

[2] Roberts also included Unison's driver-employee as a defendant, but she later voluntarily dismissed the driver-employee without prejudice.

[3] Unison also raised several other defenses to Roberts's complaint, but Roberts filed an amended complaint on February 5, 2019, which the trial court held resolved those other issues. Unison did not appeal that holding.

certificate of immediate review, the Court of Appeals granted Unison's application for an interlocutory appeal, and Unison then filed a timely appeal.

On July 1, 2020, the Court of Appeals reversed the trial court's order, holding that Roberts's notice was not sufficient because the "description of the nature of her loss does not fulfill the requirement that she state the required information 'to the extent of (her) knowledge and belief and as may be practicable under the circumstances.'" *Roberts*, slip op. at 5 (quoting OCGA § 50-21-26 (a) (5)). Quoting *Bailey v. Georgia World Congress Center*, 351 Ga. App. 629, 631 (832 SE2d 446) (2019), a case in which the Court of Appeals held that a similar notice of loss was insufficient under § 50-21-26 (a) (5) (D), the court said:

> While (Roberts'[s]) ante litem notice specifies an amount of damages and indicates that she suffered various general types of damage and injury, it does not describe the nature of those injuries or provide any details regarding the type of injury or injuries she allegedly sustained.

*Roberts*, slip op. at 5. (Punctuation omitted.) This Court then

granted Roberts's petition for certiorari.

2. The GTCA provides a limited waiver of the State's sovereign immunity, and that waiver is effective only if all of the requirements in the act are met. See OCGA § 50-21-23 (b) ("The state waives its sovereign immunity only to the extent and in the manner provided in this article and only with respect to actions brought in the courts of the State of Georgia."). OCGA § 50-21-26 (a) requires a tort claimant who plans to file a lawsuit against the State to provide an ante litem notice within a certain time frame, in a certain manner, and including certain information. See OCGA § 50-21-26 (a) (1), (2), (5). If the required notice of a claim is not given, the courts do not have jurisdiction over the claim. See id. (a) (3) ("No action against the state under this article shall be commenced and the courts shall have no jurisdiction thereof unless and until a written notice of claim has been timely presented to the state as provided in this subsection[.]").

A purpose of these notice requirements is "to ensure that the state receives adequate notice of the claim to facilitate settlement

before the filing of a lawsuit." *Williams v. Ga. Dept. of Human Resources*, 272 Ga. 624, 625 (532 SE2d 401) (2000) ("*Williams*").[4] Strict compliance with the GTCA's ante litem notice requirements is required; substantial compliance is insufficient. See *Bd. of Regents of Univ. System of Ga. v. Myers*, 295 Ga. 843, 845 (764 SE2d 543) (2014). However, "strict compliance [does not] 'take precedence over the plain language or meaning of the statute.'" Id. at 846 (citation omitted).

The particular ante litem notice requirement at issue in this case is found in OCGA § 50-21-26 (a) (5), which says:

> A notice of claim under this Code section shall state, to the extent of the claimant's knowledge and belief and as may be practicable under the circumstances, the following:
> (A) The name of the state government entity, the acts or omissions of which are asserted as the basis of

---

[4] We note that this Court said in *Williams* (and has repeated in other cases) that this is "the" purpose of the ante litem notice, but the only authority cited for that statement was a law review article that in turn cited nothing in support of that proposition. See *Williams*, 272 Ga. at 625 & n.8 (citing David J. Maleski, The 1992 Georgia Tort Claims Act, 9 Ga. St. U. L. Rev. 431, 437 (1993)). We do not doubt that *a* purpose of any ante litem notice is to give notice before litigation (that is, "ante litem") so that litigation potentially can be avoided. But the statement that this is the *exclusive* purpose of OCGA § 50-21-26, based solely on a law review article's ipse dixit, is dubious, as nothing in the statutory text supports such a restrictive conclusion.

the claim;

       (B) The time of the transaction or occurrence out of which the loss arose;

       (C) The place of the transaction or occurrence;

       (D) The nature of the loss suffered;

       (E) The amount of the loss claimed; and

       (F) The acts or omissions which caused the loss.

Because we presume that the General Assembly "'meant what it said and said what it meant,'" *Deal v. Coleman*, 294 Ga. 170, 172 (751 SE2d 337) (2013) (citation omitted), we will analyze the language that the legislature used in this provision.

(a) *The "to the extent of the claimant's knowledge and belief and as may be practicable under the circumstances" qualifier*.

OCGA § 50-21-26 (a) (5) requires a claimant to state the information required by subparagraphs (A) through (F) "to the extent of the claimant's knowledge and belief and as may be practicable under the circumstances." Unison argues that this language required Roberts to provide more details about her injuries because she *knew* more details. Unison asserts that *Myers* supports this position. It does not.

In *Myers*, this Court held that the requirement of OCGA § 50-

7

21-26 (a) (5) (E) that the ante litem notice state "[t]he amount of the loss claimed" was not satisfied by a notice that "did not state any amount of loss whatsoever," when the plaintiff had "actually incurred medical expenses at the time she gave notice." *Myers*, 295 Ga. at 846. We explained that although "the statute does not require that a claimant give notice of the 'entire loss,' the 'complete loss,' or the 'total loss,'" "the extent of [the claimant's] knowledge and belief at the time of notice included, at a minimum, the medical expenses she had incurred thus far." Id.

Although *Myers* held that OCGA § 50-21-26 (a) (5) required the plaintiff to provide more information than she had provided in her notice because she knew more information, the key to that holding was that the information the plaintiff withheld — the amount she was claiming for her loss at the time of the notice — was responsive to the requirement set forth plainly in § 50-21-26 (a) (5) (E). See *Myers*, 295 Ga. at 846 ("[T]he plain language requires notice of the amount of the loss claimed at that time, within the belief and knowledge of the claimant, as may be practicable under the

8

circumstances."). In other words, the plaintiff gave no information at all in her ante litem notice about "the amount of the loss" that she claimed, even though she knew an amount at that time based on her medical expenses up to that point. *Myers* did *not* hold that the plaintiff was required to provide any details about the amount claimed (for example, the name and itemized cost of each medical treatment she had received) — although she likely knew such details — because that additional information is not required by the plain language of subparagraph (a) (5) (E). Thus, *Myers* does not support Unison's argument that Roberts should have provided more information about her alleged loss in her ante litem notice simply because she knew more information at that time. OCGA § 50-21-26 (a) (5) (D) says that a claimant must state the "nature of the loss suffered," not everything she knows about her injuries.

Unison's argument on this point also does not offer any real guidance on how much detail Roberts was allegedly supposed to provide. Even Unison does not appear to assert that Roberts was required to share *every* detail she knew about her injuries, but it has

not explained what level of detail is required (or practicable). Rather than developing such a test, we will rely on the plain language of subparagraph (a) (5) (D) to determine what information is needed to satisfy that element of the ante litem notice.

(b) *"The nature of the loss suffered."*

OCGA § 50-21-26 (a) (5) (D) requires a claimant to state only "[t]he nature of the loss suffered." The GTCA does not define "nature," so we look to the ordinary meaning of that word in context. See *Duke v. State*, 311 Ga. 135, 140 (856 SE2d 250) (2021) ("When interpreting a statute, we must give the text its plain and ordinary meaning, view it in the context in which it appears, and read it in its most natural and reasonable way, while also giving meaning to all words in the statute." (citations omitted)). In ordinary English, "nature" in this context means the "kind" or "type" of a thing, or its "essential characteristics." See, e.g., Webster's II New Riverside University Dictionary (1994) (defining "nature" in this context as "Kind; type" or "Essential characteristics and qualities"); The American Heritage Dictionary (1991) (defining "nature" in this

10

context as "Kind; type" and "The essential characteristics and qualities of a person or a thing.").

The next question, then, is what is a kind, type, or essential characteristic of a "loss" in the specific context of the GTCA. The GTCA defines "loss" for purposes of the act as

> personal injury; disease; death; damage to tangible property, including lost wages and economic loss to the person who suffered the injury, disease, or death; pain and suffering; mental anguish; and any other element of actual damages recoverable in actions for negligence.

OCGA § 50-21-22 (3).[5] Helpfully, this definition explains what "loss" means in the GTCA context by providing examples of various kinds of loss recoverable in negligence actions. These examples demonstrate what types of loss are pertinent in this context, and using these examples or similar descriptions of loss in an ante litem notice should therefore be sufficient to state "[t]he nature of the loss

---

[5] We note that the Court of Appeals in this case appeared to conflate "loss" and "injury" in its holding that the statute requires the claimant to describe "the nature of [her] injuries" and provide "details regarding the type of injury." *Roberts*, slip op. at 5. Unison similarly conflates those terms in its briefing here. As is clear from the definition of "loss," however, an injury — such as personal injury — may be a kind of loss, but "loss" and "injury" are not entirely interchangeable.

11

suffered" in compliance with OCGA § 50-21-26 (a) (5) (D). For example, if a claimant contracted tetanus due to alleged negligence by the State, "disease" would likely be her principal type of loss; the essential characteristic of that loss is that it is a disease and not, for example, that it is tetanus or that it is infectious or that it is "characterized by tonic spasm of voluntary muscles." Medical definition of "tetanus," Merriam-Webster Dictionary (last updated Aug. 24, 2021), https://www.merriam-webster.com/dictionary/tetanus#medicalDictionary.[6]

In its brief here, Unison argues that Roberts's ante litem notice was insufficient because "it merely parrots portions of the GTCA's definition of 'loss' in a perfunctory manner." As mentioned above, Roberts's notice described the nature of her loss as

> [b]odily injury; past, present and future mental and physical pain and suffering; infliction of emotional

---

[6] We note, however, that if a claimant lists tetanus (which is a disease) in her ante litem notice as the nature of her loss, she has sufficiently stated that disease as a loss, although her specifically naming the disease was not required and other types of loss that may have resulted from the tetanus, such as medical bills or lost wages, would not be indicated. Indeed, nothing we say today precludes a claimant from providing more details about her claim in her ante litem notice than are statutorily required.

12

distress; past, present and future medical expenses; past, present and future lost earnings; diminished earning capacity.

A comparison of that description with the statutory definition of loss shows that Roberts did not merely copy the loss definition. Instead, she selected from the definition the types of loss that apply to her claim.[7] This is an appropriate way of fulfilling the notice requirement in OCGA § 50-21-26 (a) (5) (D).[8]

---

[7] In her brief, Roberts highlights that her ante litem notices said "bodily injury" rather than "personal injury" and asserts that "bodily injury" is a clearer description than "personal injury" because "personal injury" could apply to many categories of loss. However, in the context of this tort claims act, "personal injury" — which is listed separately from other kinds of injuries to a person, such as death or mental anguish — would plainly include "bodily injury." See Black's Law Dictionary (11th ed. 2019) (defining "personal injury" when used "[i]n a negligence action" as "any harm caused to a person, such as a broken bone, a cut, or a bruise; bodily injury. — Also termed *bodily injury*"). In any event, bodily injury appropriately described a kind of loss suffered by Roberts, and we need not decide today the exact parameters of "personal injury" as used in the context of the GTCA.

[8] We emphasize, however, that as Roberts did here, the claimant must list the types of loss that she actually alleges she suffered. A true parroting of the entire definition of loss under the GTCA — without any tailoring to the specific loss the claimant suffered in her particular case — may not be deemed to comply with OCGA § 50-21-26 (a) (5) (D) if it includes types of loss *not* allegedly suffered by the claimant. Moreover, the loss definition gives examples of kinds of loss, not an exhaustive list. See OCGA § 50-21-22 (3) (concluding with "any other element of actual damages recoverable in actions for negligence"). Nothing precludes a claimant from including in the description of her loss types of loss not expressly listed in the definition.

13

(c) *The other parts of OCGA § 50-21-26 (a) (5).*

In considering the meaning of a statutory provision, we should not read it in isolation from the other statutory provisions of which it is a part. See *Hartley v. Agnes Scott College*, 295 Ga. 458, 462 (759 SE2d 857) (2014). As quoted above, OCGA § 50-21-26 (a) (5) as a whole requires a claimant to provide information on six subjects related to her claim; "[t]he nature of the loss suffered" is only one of these. See OCGA § 50-21-26 (a) (5) (A)-(F). The combination of required information can provide a clearer picture of the loss alleged by the claimant than the information required by one subparagraph alone. And we can consider this more complete picture of the loss in determining whether the ante litem notice gave the State "adequate notice of the claim to facilitate settlement before the filing of a lawsuit." *Williams*, 272 Ga. at 625.

In this case, for example, as required by subparagraphs (E) and (F), Roberts's ante litem notice stated the "amount of the loss claimed" and the "acts or omissions which caused the loss." So in addition to knowing the types of loss that Roberts suffered, Unison

14

knew that Roberts was injured in a high-speed car accident and was seeking $1,000,000 for her loss, indicating that the overall loss claimed was quite serious. Unison argues that it needed more details about Roberts's injuries to facilitate settlement, but Unison has never explained what additional details were needed or how such details would have been significant. For example, it is not clear why Unison could better consider settlement if, in addition to all of the information provided in the ante litem notice, it knew whether Roberts injured her lower left leg rather than her upper right arm or had soft tissue injuries rather than broken bones.[9]

Indeed, an ante litem notice that follows the statute and focuses on the *types* of loss alleged, rather than providing lots of details about specific injuries, may be a more effective way to alert the State to the claim it may face in a lawsuit and thereby facilitate settlement. For example, if a claimant's notice said that she suffered a transverse fracture of the tibia and fibula (a broken lower leg), she

---

[9] In fact, the record indicates that before Roberts sent her ante litem notice, the DOAS liability adjuster had made at least three offers of settlement to Roberts (none of which was accepted).

has provided notice of a personal injury. But she has not indicated whether the broken leg caused any other kinds of loss, such as medical bills, lost wages, and pain and suffering. Although Unison may view this hypothetical notice as more detailed, it may well provide less useful information. The notice provided by Roberts, on the other hand, expressly explained the kinds of damages that she may seek at trial, including damages based on bodily injury, pain and suffering, medical bills, and lost wages. In sum, her ante litem notice adequately described the "nature of the loss" for her claim as required by OCGA § 50-21-26 (a) (5) (D).

3. The Court of Appeals' opinion in this case principally relied on two of that court's prior decisions, *Bailey* and *Williams v. Wilcox State Prison*, 341 Ga. App. 290 (799 SE2d 811) (2017) ("*Wilcox State Prison*"). In each of these cases, the Court of Appeals held that the ante litem notice at issue was insufficient to describe the claimant's loss. Unison principally relies on these two cases as well. As discussed below, however, the notice in *Wilcox State Prison* was quite different from Roberts's notice, and *Bailey* failed to consider

16

the plain meaning of the statute and is inconsistent with other case law, including *Williams* — this Court's only prior decision considering the sufficiency of a "nature of the loss" description under OCGA § 50-21-26 (a) (5) (D). To explain these points, we will review *Williams* and the cases that followed it before turning to *Wilcox State Prison, Bailey*, and *Bush v. Eichholz*, 352 Ga. App. 465 (833 SE2d 280) (2019), an opinion that deemed sufficient an ante litem notice very similar to the one given in *Bailey*.

(a) *Williams and its progeny*.

*Williams* and the cases that followed it addressed a plaintiff's alleged failure to mention one type of loss in the ante litem notice. In *Williams*, the notice said that the claimant, Sheila Williams, had suffered

> "pain, disfigurement, and greatly reduced life expectancy, with a concomitant loss of both the intangible and tangible benefits of life itself, resulting from the denial to her of the benefits of early detection and treatment of breast cancer, including what would have been an increased likelihood of total recovery, a likelihood of longer term survival, and a likelihood of reduced treatment, and suffering."

17

272 Ga. at 627 (Benham, C. J., dissenting) (quoting the notice). The notice also said that her husband had suffered loss of consortium. See id. at 624 (majority opinion). Soon after that notice, Mrs. Williams died, and Mr. Williams then filed a wrongful death claim but did not provide an updated notice. See id. This Court held that the notice was not sufficient for the wrongful death claim because it "did not adequately describe the nature of [Mr. Williams's] loss after [Mrs. Williams's] death." Id. at 626.

Thus, the defect in the ante litem notice was not a lack of detail about the various types of loss alleged but a complete failure to include death as a type of loss suffered. In fact, the Court noted that Mr. Williams's loss of consortium claim remained pending in the trial court, and Mrs. Williams's estate's claim for her pain and suffering had apparently been filed as a separate action. See *Williams*, 272 Ga. at 624. In this way, with its focus on the types of loss listed in the ante litem notice, our holding in *Williams* supports our conclusion today about the meaning of "the nature of the loss."

The Court of Appeals followed *Williams* in three cases that

18

dealt with the question of whether a type of loss had been included in the ante litem notice. In *Georgia Ports Authority v. Harris*, 243 Ga. App. 508 (533 SE2d 404) (2000), the claimant gave ante litem notice of "'injuries [that] occurred as a result of [a] section of pipe falling, causing extensive damage to [Harris's] knee, ankle[,] and shoulder.'" See id. at 510 (quoting the notice). The Court of Appeals affirmed the jury's judgment in favor of Harris as to his claim for "personal injuries," rejecting the argument that the notice was not properly delivered under the GTCA and a number of arguments of error at trial. See id. at 509-514.[10] The Court of Appeals also affirmed the trial court's decision not to enter judgment in favor of Harris's wife for her loss of consortium claim. See id. at 515-516. Citing *Williams*, the Court of Appeals held that Harris's description of the nature of the loss claimed did not give notice of his wife's separate loss of consortium claim. See *Harris*, 243 Ga. at 515.

In *Georgia Department of Transportation v. Baldwin*, 292 Ga.

---

[10] This Court affirmed the Court of Appeals' holding that the delivery of the ante litem notice complied with the GTCA in *Georgia Ports Authority v. Harris*, 274 Ga. 146, 149-150 (549 SE2d 95) (2001).

App. 816 (665 SE2d 898) (2008), the ante litem notice described the nature of the loss as

> the wrongful death of Baldwin's wife; the full value of her life; the fright, shock, and mental suffering of the wife; physical pain and suffering of the wife; loss of consortium, society, advice, example, and counsel of the wife; value of the wife's services; punitive damages; attorney fees, costs, and expenses; and "any other damages as may be lawfully authorized which arise out of the above-described transaction or occurrence."

Id. at 824 (quoting the notice). The Court of Appeals affirmed the judgment in favor of Baldwin for the wrongful death claim based on his wife's death as well as claims of loss of consortium and pain and suffering, rejecting several evidentiary objections. See id. at 816-824. However, the court held that Baldwin's claim for wrongful death of his unborn child was properly dismissed because "[t]he notice did not mention the wife's pregnancy or the loss of their unborn child." Id. at 824. So like in *Williams*, the plaintiff's problem in *Harris* and *Baldwin* was failure to include a *type* of loss in the notice.

In *Delson v. Department of Transportation*, 245 Ga. App. 100

20

(537 SE2d 381) (2000), by contrast, the Court of Appeals held that claims for wrongful death filed by the surviving children of the two decedents had been sufficiently described when the ante litem notice filed on behalf of the estate said: "'Claims which may be alleged include wrongful death, negligence, loss of consortium, as well as others which may become apparent through the discovery process.'" Id. at 101 (quoting the notice). The court distinguished *Williams*, "because in *Williams*, no notice of a wrongful death claim was provided to the State," whereas "[i]n this case, the State received notice that a wrongful death claim would be asserted." *Delson*, 245 Ga. App. at 102.[11] Notably, the approved description simply provided the type of loss — wrongful death. It did not provide specific details about the parents' deaths, such as the medical cause of death or any

---

[11] The dissent argued that the ante litem notice was insufficient based on *Williams* because the notice did not alert the State that the children of the decedents, rather than the decedents' estates, would be filing a lawsuit. See 245 Ga. App. at 103 (Blackburn, J., dissenting). The dissent also noted, however, that the "estates cannot assert a wrongful death claim; only the surviving children can assert that claim," id. at 104, and as the majority pointed out, wrongful death was included in the ante litem notices, id. at 102 (majority opinion). In any event, that part of the opinion is not relevant to this case, because Unison does not assert that Roberts is a surprise claimant.

21

contributing factors. Thus, this decision, like the others discussed above, supports our holding that OCGA § 50-21-26 (a) (5) (D) requires a claimant to list only the types of her loss. None of these cases lends support to Unison's argument that the "nature of the loss" must include detailed descriptions of the claimant's injuries.

(b) *Bailey and the recent Court of Appeals opinions.*

In deciding this case, the Court of Appeals did not mention *Williams* or its progeny. Instead, it looked to *Wilcox State Prison* and *Bailey*, in which the Court of Appeals held that the ante litem notices failed to provide the nature of *any* loss — while ignoring *Bush*, a case that addressed the same issue but reached the opposite result. We will discuss these cases next.

(i) *Wilcox State Prison.*

The plaintiff's ante litem notice in *Wilcox State Prison* said that she "'sustained serious injuries'" as a result of a slip-and-fall and that she had requested her medical records and expected her damages to exceed $25,000. 341 Ga. App. at 294 (quoting the notice). The Court of Appeals held that this description was insufficient

because it "provided no information regarding the injuries for which [the plaintiff] received or planned to receive medical treatment." Id.

(ii) *Bailey*.

The plaintiff's ante litem notice in *Bailey* said that because of a "'failure to warn of dangers relating to the premises and to maintain premises in a safe condition,'" she suffered

> "personal injuries, present and pass [sic] medical damages, present and future loss [sic] wages, Intentional Infliction of Emotion [sic] Distress, lost [sic] of consortium and other damages in excess of $6 million dollars[sic]."

351 Ga. App. at 631 (quoting the notice). The Court of Appeals held that this description of "various general types of damage and injury . . . does not describe the nature of those injuries or provide any details regarding the type of injury or injuries she allegedly sustained." Id. The court reasoned that "[s]imilar to [*Wilcox State Prison*], Bailey's ante litem notice stated that she expected her damages to exceed $6,000,000, but provided no information about the specific injuries causing this alleged amount of damage." Id. at

23

632.[12]

(iii) *Bush*.

Three days after *Bailey*, a different Court of Appeals panel decided *Bush*, in which the plaintiff filed a legal malpractice claim alleging that he lost his ability to file a tort claim against the Georgia Ports Authority for his injuries from a crane accident because his

---

[12] In support of its holding, *Bailey* also cited *Camp v. Coweta County*, 271 Ga. App. 349, 354 (609 SE2d 695) (2005). In that case, after affirming the dismissal of the complaint on two other grounds (one of which this Court reversed in *Camp v. Coweta County*, 280 Ga. 199 (625 SE2d 759) (2006)), the Court of Appeals concluded its opinion with the summary statement: "Further, the notice does not provide the specific place or time of the incident or the nature of Camp's injuries." 271 Ga. App. at 355. But Camp's ante litem notice said that he "'was severely injured when he fell from a scaffold on or about August 27, 2002, at the Coweta County Fairgrounds'" and that his "'legs were shattered when he landed in the rocks beneath the scaffold. It is unclear at this point whether Mr. Camp will ever regain the full use of his legs.'" Id. at 354-355 (quoting the notice). Thus, at least as to the first two points — that the notice did not provide the specific time or place of the incident — the Court of Appeals was obviously wrong. And assuming the court was referring to the requirement that a claimant list "the nature of the *loss*" when it said that Camp did not provide "the nature of Camp's *injuries*," we doubt that the opinion was entirely correct on this point either. Although Camp did not provide as clear a list of the types of loss he suffered as Roberts has provided in this case, his notice did make clear that he at least suffered a personal injury. It seems that this should be sufficient notice for at least that claim, although the opinion does not indicate what claims Camp sought to bring in his lawsuit against Coweta County. In any event, because his notice was not nearly as clear as Roberts's notice, we need not decide whether *Camp*'s summary alternate holding on this point — in an opinion that was wrong on at least three other points — was correct.

counsel's ante litem notice was insufficient. See *Bush*, 352 Ga. App. at 465-468. The plaintiff's ante litem notice in *Bush* described his loss as

> "pain and suffering, past, present and future, both mental and physical, all medical expenses incurred for hospitals, physicians, therapy, medication and related expenses, past, present and future, lost wages, lost future earning capacity, a diminishment in capacity to labor, a loss of enjoyment of life, loss of consortium, loss of services and the scarring, disfigurement, disabilities, impairment and permanent injuries resulting from this incident."

Id. at 469 (quoting the notice). The Court of Appeals held that it was "clear" that this notice "described the nature of Bush's losses." Id. In support of its conclusion, the court cited *Williams*, noting that in *Williams* when the "ante litem notice described the nature of a husband's and wife's losses as pain, disfigurement, a reduced life expectancy, and a loss of consortium," this Court said "the couple 'gave written notice of their claims under OCGA § 50-21-26 of the Georgia Tort Claims Act.'" *Bush*, 352 Ga. App. at 469 (citing *Williams*, 272 Ga. at 624-626). The Court of Appeals then distinguished *Wilcox State Prison* on the ground that "serious

25

injuries" is a "general phrase" that "could ostensibly apply to any of the losses listed in OCGA § 50-21-22 (3)." *Bush*, 352 Ga. App. at 469-470. The court did not mention *Bailey*.

(iv) *Reconciling Wilcox State Prison, Bailey, and Bush.*

The holding in *Wilcox State Prison* is consistent with the holding in *Bush* and with our holding today, because the claimant in *Wilcox State Prison* did not identify any type of loss in her ante litem notice. Although she identified the amount of her loss (at least $25,000) and what sort of incident caused the loss (a slip-and-fall), her description of the nature of her loss ("serious injuries") gave no indication of what kind of loss she had suffered. From the allegation that the loss was caused by a slip-and-fall and that she was getting some kind of medical treatment, the State perhaps could have surmised that her loss may have included personal injury, but that is not certain. Instead, her "serious injuries" that required medical treatment could have been mental anguish or some kind of disease triggered by the fall. Moreover, she did not state if her "serious injuries" included economic damages, such as property damaged in

26

the fall or lost wages. Because all of this was left to speculation by the terse description of the claimant's loss, the Court of Appeals' conclusion that the notice was insufficient appears sound — but it does not support a holding that Roberts's notice, which did clearly indicate the several types of loss she allegedly suffered, was insufficient.

*Bailey*, on the other hand, would support the Court of Appeals' holding that Roberts's notice was insufficient. But *Bailey* was wrongly decided. The *Bailey* court concluded that the plaintiff's notice there was "[s]imilar to [*Wilcox State Prison*]" because it "provided no information about the [claimant's] specific injuries." 351 Ga. App. at 632. The notice provided by Bailey, however, was much more thorough. Rather than simply saying that her "injuries" were "serious," Bailey stated that her loss included personal injuries, medical damages, lost wages, emotional distress, and loss of consortium. By holding that this notice — which the court described as listing "general *types* of damage and injury," *Bailey*, 351 Ga. App. at 631 (emphasis added) — was insufficient, *Bailey* went

27

much further than *Wilcox State Prison*, without justifying the expansion. The court did not explain what language in OCGA § 50-21-26 (a) (5) (D) required "details" as to "the type of injury" (and as explained in Division 2 above, there is no such language), nor did the court give any guidance as to what sort of details would be required. See *Bailey*, 351 Ga. App. at 631.

By contrast, the *Bush* court, when faced with an ante litem notice very similar to the one in *Bailey*, looked to our decision in *Williams* and, consistent with that opinion and the text of the statute, concluded that the notice was sufficient. This was the correct conclusion. Accordingly, we overrule *Bailey*.[13]

4. For the reasons discussed above, we hold that Roberts's ante litem notice, which listed the types of loss that she allegedly suffered, was sufficient under OCGA § 50-21-26 (a) (5) (D). We

---

[13] Additionally, to the extent the statement in *Wilcox State Prison* that the claimant's notice was insufficient because she "provided no information regarding the injuries for which she received or planned to receive medical treatment," 341 Ga. App. at 294, may be read to indicate that a claimant must give specific details about all bodily injuries sustained, that language is disapproved.

therefore reverse the Court of Appeals opinion holding otherwise.

*Judgment reversed. All the Justices concur, except McMillian, J., who concurs specially.*

MCMILLIAN, Justice, concurring specially.

I write separately to clarify that I do not agree with the majority's characterization of Unison's argument as set out in the last paragraph of Division 2 (a), and in particular the sentence that reads: "Even Unison does not appear to assert that Roberts was required to share *every* detail she knew about her injuries, but it has not explained what level of detail is required (or practicable)."[14] I see nothing problematic in an advocate's assertion of an argument that is in their client's best interest. However, because that sentence is not necessary to the majority's analysis, I can concur fully in the remainder of the opinion.

---

[14] The emphasis appears in the original.

Decided September 21, 2021.

Certiorari to the Court of Appeals of Georgia — 356 Ga. App. XXVIII.

*Johnson Floyd, Graham F. Floyd, Mylee M. O'Connor*, for appellant.

*Christopher M. Carr, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Loretta L. Pinkston-Pope, Senior Assistant Attorney General, A. Ellen Cusimano, William K. Scott, Assistant Attorneys General*, for appellee.